**In re PAN AM CORPORATION, et al., Debtors.**

**Thomas COKER, et al., Plaintiffs,**

v.

**PAN AM WORLD AIRWAYS, INC., Pan Am World Services, Inc., and Alert Management Systems, Inc., Defendants.**

**Hans Frank ROSENKRANZ, et al., Plaintiffs,**

v.

**PAN AM WORLD AIRWAYS, INC., Pan Am World Services, Inc., and Alert Management Systems, Inc., Defendants.**

**Bankruptcy Nos. 91 B 10080 to 91 B 10087.
Misc. No. M47.**

United States District Court,
S.D. New York.

May 6, 1991.

Speiser, Krause, Madole & Nolan, New York City (Kenneth Nolan, of counsel), Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, Miami, Fla. (Aaron S. Podhurst, Michael S. Olin, Joel S. Perwin, of counsel), for plaintiffs.

Windels, Marx, Davies & Ives, New York City, James M. Shaughnessy, Arthur E. Hoffman, Jr., Susan F. Jennison, Keelin Kavanagh, for defendants.

HAIGHT, District Judge:

Pan Am Corporation and affiliated companies (hereinafter collectively "Pan Am"), debtors in a proceeding commenced in this district under Chapter 11 of the Bankruptcy Code, move under 28 U.S.C. § 157(b)(5) to transfer to this district certain wrongful death claims pending in a Florida state court and arising out of the crash on December 21, 1988 of Pan Am Flight 103 in Lockerbie, Scotland. Pan Am's motion, resisted by the Florida plaintiffs, requires consideration of the statutes governing jurisdiction of the district courts in bankruptcy, 28 U.S.C. §§ 157, 1334, viewed in the

context of statutory multidistrict litigation, 28 U.S.C. § 1407.

### Background

The tragic circumstances of the Lockerbie crash are well known. The crash killed all the passengers and crew members on board Pan Am Flight 103, and eleven people on the ground.

Wrongful death claimants filed suits against Pan Am in various federal and state courts. The actions which are the subject of the instant motion are 55 wrongful death actions commenced in the Circuit Court of the Eleventh Judicial Circuit, Dade County, Florida (the "Florida state court"). The Florida state court consolidated 54 of those actions under the caption of *Thomas Coker v. Pan American World Airways, Inc., et al.,* No. 89–14025. The fifty-fifth wrongful death action is *Hans Frank Rosenkranz v. Pan American World Airways, Inc.,* No. 89–58581.

Each of the 54 plaintiffs in the *Coker* action also filed an action in the United States District Court for the Southern District of Florida. Those federal actions were identical with the Florida state actions, with the exception that the federal actions asserted claims under the Warsaw Convention.[1] In addition, Pan Am removed two of the Florida state actions consolidated under the *Coker* action to the District Court for the Southern District of Florida on the basis of the Warsaw Convention. That district court thereafter remanded the cases back to the Florida state court, on the ground that the Warsaw Convention, when raised only as a defense, does not give rise to a federal question, and thus cannot serve as the basis for removal of a state action to federal court. The companion actions commenced by the *Coker* plaintiffs in the federal court in Florida were transferred under 28 U.S.C. § 1407 by the Judicial Panel on Multidistrict Litigation to the Eastern District of New York, where they are currently being supervised by Chief Judge Platt. *In re Air Disaster at Lockerbie, Scotland, on December 21, 1988,* 733 F.Supp. 547 (E.D.N.Y.1990).

On January 8, 1991, Pan Am and its related entities filed the captioned petitions for reorganization pursuant to Chapter 11 of the Bankruptcy Code. Bankruptcy Judge Blackshear is in charge of proceedings in the bankruptcy court.[2]

In the multidistrict litigation in the Eastern District of New York, Chief Judge Platt has set the case down for trial on June 17, 1991 on issues of liability. He acted under Rule 14(b) of the Rules for Multidistrict Litigation under 28 U.S.C. § 1407, which empowers a multidistrict litigation transferee judge to transfer the litigation to the transferee district for trial under the principles articulated in 28 U.S.C. §§ 1404(a) and 1406. The Florida State Court has also set the *Coker* and *Rosenkranz* actions down for trial on June 17, 1991.

It is common ground that even under ordinary circumstances these trial dates are far from definite. But it is also common ground that Bankruptcy Judge Blackshear controls these trial dates. All actions against Pan Am were stayed by the filing of the bankruptcy petition. Since that time, Judge Blackshear has lifted the stay only for the narrow purpose of allowing the parties to complete pretrial discovery, and take certain other limited litigation steps which I need not recount. However, Judge Blackshear in an order dated February 8, 1991 continued the automatic stay in effect "as to all claims against all debtors in the MDL Litigation and the Florida state court Litigation pending further order of the Bankruptcy Court"; and he extended that stay to the non-debtor defendant Pan Am World Services, Inc., deeming claims against that cor-

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C. App. at 1502.

2. The three defendants in the Florida actions are Pan American World Airways, Inc.; Pan Am World Services, Inc.; and Alert Management Systems, Inc. The first and third of these corporate defendants are debtors in the Chapter 11 proceeding in this court; the second defendant, Pan Am World Services, Inc., is not.

poration "to be claims against debtors for purposes of the automatic stay ... and the debtors' plan of reorganization." Order dated February 8, 1991 at ¶ 4.

It follows that no trial on the merits can take place, either in the Florida state court or in the MDL transferee court, unless and until Bankruptcy Judge Blackshear gives his consent.

In these circumstances, Pan Am made the present motion to transfer the Florida state court actions to this district under 28 U.S.C. § 157(b)(5). Pan Am professes its intention, once that transfer has been accomplished, to make a motion under § 1407 before the judicial panel on multidistrict litigation to transfer the cases to the Eastern District of New York.

The Florida plaintiffs contend that the statutory scheme does not permit what Pan Am proposes; but that if it did, this Court has the power under § 1334(c)(1) to abstain from transferring the Florida cases here under § 157(b)(5), and that in this case the Court should abstain.

### The Pertinent Statutes

The district courts derive their original and exclusive jurisdiction in bankruptcy cases from the original bankruptcy statutes and their amendments, now codified at 28 U.S.C. § 1334. § 1334 provides in pertinent part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Following a successful constitutional challenge to the jurisdiction exercised by bankruptcy court judges under the bankruptcy statutes as they then existed, *see Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress enacted a statute in 1984 governing the creation and composition of bankruptcy courts which is codified at 28 U.S.C. §§ 151–157. § 157 provides:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

Subsection 157(b)(2) defines "core proceedings," and subsections (b)(3) and (4) contain provisions relevant to core and non-core proceedings which are not pertinent to this discussion.

Pan Am bases the present motion upon 157(b)(5), which provides:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

As for procedures under the multidistrict litigation statute, 28 U.S.C. § 1407(c) provides:

Proceedings for the transfer of an action under this section may be initiated by—

(i) the judicial panel on multidistrict litigation upon its own initiative, or

(ii) motion filed with the panel by a party in any action in which transfer for coordinated or consolidated pretrial

proceedings under this section may be appropriate....

### Discussion

■ Preliminarily, three jurisdictional principles are not in dispute. First, the district court, not the bankruptcy court, decides whether or not to transfer a case under § 157(b)(5). Second, the multidistrict litigation panel, not the district court, decides whether or not to transfer a case under § 1407. Third, the bankruptcy court, not the district court or the multidistrict litigation transferee court, decides whether and when to lift the stay of proceedings against the debtors.

While I must decide whether or not an order of transfer under § 157(b)(5) would be providently made in the case at bar, that decision is informed by the other issues, although those issues will be resolved by different judicial officers.

■ Pan Am argues for transfer of the Florida state court actions to this district under § 157(b)(5) in order to avoid duplicative litigation and the proliferation of expenses harmful to bankrupt corporations attempting reorganization. It is immediately apparent, however, that those purposes cannot be achieved solely by the transfer of the Florida actions to this district. As Pan Am's "game plan" explicitly recognizes, its purpose will be achieved only if, following transfer to this district, Pan Am then successfully applies to the multidistrict litigation panel for a further transfer to the Eastern District of New York. At least a brief pause in the limbo (some would call it purgatory) of the Southern District of New York is necessary before final consolidation across the East River, because § 1407 does not empower the multidistrict litigation panel to transfer actions pending in state courts. The statute applies only when "civil actions involving one or more common questions of fact are pending in different districts," § 1407(a).

But the Florida plaintiffs argue that the plain language of § 157(b)(5), relied upon by Pan Am for the first stage in a two-stage voyage ending in Chief Judge Platt's courtroom, forecloses embarking upon the second stage. § 157(b)(5) provides, in apparently mandatory terms, that wrongful death claims against bankrupts or debtors in possession

> *shall be tried* in the district court in which the bankruptcy case is pending, or in the district in which the claim arose ... (emphasis added).

That language, the Florida plaintiffs contend, would bar even the august jurists on the multidistrict litigation panel from transferring these cases to the Eastern District of New York, since the statute requires that they be tried "in the district court in which the bankruptcy case is pending," namely, the Southern District of New York.[3]

Apparently no prior case considers the relationship between § 157(b)(5) and multidistrict practice under § 1407. In *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1011 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), the Fourth Circuit said that the purpose underlying § 157(b)(5) is "to centralize the administration of the [bankrupt's estate] and to eliminate 'the multiplicity of forums for the adjudication of parts of a bankruptcy case.'" (quoting 130 Cong.Rec.H. 7492, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Adm.News at 576, 579). *Robins* did not involve multidistrict litigation practice; and, if I may presume to say so, I do not think that these judicial and legislative characterizations of purpose would be of much assistance to the multidistrict judicial panel in deciding whether it had the authority to retransfer cases initially transferred to a district court under § 157(b)(5). I am quite prepared to say, however, that the transfer of state court wrongful death actions to this district under § 157(b)(5), in anticipation of an application for a further transfer under § 1407, is the jurisdictional equivalent of setting sail on uncharted seas.

---

3. No party at bar suggest the existence of § 157(b)(5)'s alternative forum, the district "in which the claim arose"; and, given the site of the crash in Scotland, it is not clear what such district would be.

■ That uncertainty, carrying with it the inherent risk of time-consuming appeals, constitutes in my judgment an appropriate factor to consider in deciding whether, under § 1334(c)(1), I should abstain from exercising bankruptcy jurisdiction over these Florida actions.

§ 1334(c)(1) formed a part of the 1984 Bankruptcy Act which also includes § 157(b)(5). Apparently only one appellate court has considered the seeming tension between the two provisions. *See In Re White Motor Credit,* 761 F.2d 270 (6th Cir.1985), *reversed on other grounds,* 863 F.2d 50 (6th Cir.1988).

The Sixth Circuit in *White Motor Credit* held that under the 1984 Bankruptcy Act scheme, which among other things prevented reference of tort cases to bankruptcy courts as in the past, "it makes good sense to give the district courts wide latitude in referring the cases through abstention to other courts." 761 F.2d at 274. Thus the court held that § 1334(c)(1) empowered the district courts, through the vehicle of abstention, to leave tort cases in other cases for adjudication, rejecting the argument that § 157(b)(5) prevented them from doing so.

■ Although the legislative history of the 1984 Bankruptcy Act is sparse—"there is no House or Senate report of any kind and no conference report," 761 F.2d at 271—the Sixth Circuit found support for its conclusion in remarks by Senator Dole, one of the conferees, in the Senate debate on the Conference Report prior to its adoption:

[W]here abstention does not occur, those cases will be handled by the district court where bankruptcy has been filed, or, if that court finds it appropriate, where the claim arose. 130 Cong.Rec.S. 8889 (Daily ed. June 29, 1984), *quoted* at 761 F.2d at 273.

The Sixth Circuit, having quoted Senator Dole's remarks, characterized them as "significant," and went on to say:

In his view, the Act "allows abstention for personal injury cases" and only "where abstention does not occur" will the requirement for adjudication in a district court take effect. These two sentences indicate clearly that the conferees contemplated that in liquidating tort cases in bankruptcy, the district court would first decide whether it should leave the cases with respect to which claims have been filed in the bankruptcy court in the courts in which they are pending and then, if it decides against this course, the district court must try the cases itself or send them to the federal court for the district in which they arose. These sentences from Senator Dole's remarks, plus the fact that section 157(b)(4) of title 28 removes tort cases from mandatory abstention under section 1334(c)(2) but does not remove discretionary abstention under section 1334(c)(1), convinces us that the district court has the authority to leave tort cases in the courts in which they are pending for liquidation there. *Id.* at 273.

I find this analysis persuasive. There is no contrary Second Circuit authority.

■ While the Florida plaintiffs downplay this factor, it is fair to say they resist Pan Am's motion in part because they perceive that Florida law favors their interests. After the case at bar was briefed and argued, the Second Circuit decided *In re Air Disaster at Lockerbie, Scotland, on December 21, 1988,* 928 F.2d 1267 (2d Cir. 1991). The Second Circuit there held, in litigation arising out of the same crash as the case at bar, that the Warsaw Convention preempts state law causes of action, so that punitive damages are not recoverable in actions governed by the Convention. In a supplementary letter brief, counsel for Pan Am argued in the case at bar that under the Second Circuit's holding in *Lockerbie* "the Warsaw Convention provides plaintiffs with their exclusive cause of action when the claim falls within the scope of the Convention, and, therefore, preempts all state law causes of action." That factor, the argument continues, bears upon the existence of questions of state law and compelling state interest in determining whether a federal court should abstain. Pan Am contended:

Plaintiffs argued that this Court should abstain from ordering transfer of the

Florida state court actions, in part because the claims asserted in the Florida state court actions are founded on Florida state law and thus raise issues not identical to those raised by the Warsaw Convention. The decision of the Second Circuit Court of Appeals completely forecloses that argument. Letter brief of March 25, 1991 at 2.

Pan Am's argument would have more force if Florida lay within the Second Circuit. But Florida is in the Eleventh Circuit; and that court has explicitly declined to address the issue of whether the Warsaw Convention provides the exclusive cause of action for injuries sustained during international air transportation. *See Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1482 n. 33 (11th Cir.1989), *reversed,* — U.S. ——, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). *Floyd* presented the question of whether mental anguish unaccompanied by physical injury was compensable under the Warsaw Convention. The Eleventh Circuit held that the phrase "lesion corporell" in the authentic French text of Article 17 of the Convention encompassed purely emotional distress. The Supreme Court reversed, but in its concluding paragraph was careful to point out the limited nature of its own ruling, as well as that of the Eleventh Circuit:

> Eastern urges us to hold that the Warsaw Convention provides the exclusive cause of action for injuries sustained during international air transportation. The Court of Appeals did not address this question, and we did not grant certiorari to consider it. We therefore decline to reach it here.

Nor has the Supreme Court ever addressed the issue of Warsaw Convention preemption of state law claims.

Accordingly the question remains open, both in the Eleventh Circuit and in the Supreme Court. Florida district court authority permits the prosecution of state law causes of action arising out of flights which are subject to the Warsaw Convention; *see, e.g., Rhymes v. Arrow Air, Inc.*, 636 F.Supp. 737, 741 (S.D.Fla.1986) (a plaintiff "may choose to state his cause of action solely on a state law theory and bring the action in state court subject to the limitations of the Convention.").

It is therefore apparent that Pan Am seeks to transport these plaintiffs from Florida, their forum of choice where certain state law claims may be viable, to another forum, where those claims would be precluded. That is a circumstance which militates against abstention, and not in favor of it.

I conclude that abstention under § 1334(c)(1) is appropriate in this case. On the one hand, transfer would lead directly to further legal maneuvering in jurisdictional areas whose boundaries are uncertain, and the only certainty is further delay and expense. Moreover, that less than ideal state of affairs is purchased at the cost of depriving plaintiffs not only of their forum of choice, but legal theories of recovery available there but not available here, at least under presently existing law. On the other hand, it is not necessary to transfer the Florida cases to this district under § 157(b)(5) to make possible the bankruptcy court's effective administration of Pan Am's Chapter 11 proceedings. Bankruptcy Judge Blackshear already holds that supervisory power; indeed, he has already exercised it by continuing the stay of trials of the Lockerbie actions, both in the multidistrict litigation federal district court, and in the Florida state court.

In the exercise of my discretion, I deny the debtors' motion under 28 U.S.C. § 157(b)(5) for an order of transfer. I do so in the interest of justice, and also in the interest of comity with the Florida state court and respect for Florida law. 28 U.S.C. § 1334(c)(1).

It is SO ORDERED.