950 F.2d 839
 26 Collier Bankr.Cas.2d 20, Bankr. L. Rep. P 74,377
In re PAN AMERICAN CORPORATION; Pan American World Airways,
Inc.; Pan American Express, Incorporated; Pan American
Shuttle, Incorporated; PAA Corporation; Pan American
Commercial Services, Incorporated; Allmat International,
Incorporated; Alert Management Systems, Incorporated, Debtors.
Thomas COKER; Hans Frank Rosenkranz; Marina De
Larracoechea Azumendi; Georgia Nucci; Cherry Pierce;
Bernadette Mary Concannon; Rosemary Stevenson; Thomas
Henry O'Gara; Anne O'Gara; Barry J. Valentino, Sr.; Alan
Joseph Jones; Rosemary Lillian Jones; Michael Hourihan;
John Thomas Bacciochi; David William Owen; Mary Elizabeth
Thomas; Patricia Mary Booth; Jerichem Rubin; Herbert
Swire; Jane Valerie Swire; Paul Aicher; John Frederick
Mosey; Katia Cadman; Barry John Flick; Rizziero Dinardo;
G. Edward Morgan, Jr.; Stanley Maslowski; Mack Saunders;
Joseph L. Tobin, Jr.; John Berkley; Jean Berkley; Patrick
F. Noonan; Nancy Noonan; Susan Gannon; M. Victoria Diaz
Cummock; Robert P. Berrell; Sara S. Berrell; Chester D.
Phillips; Gheorghina Vulcu; Shirley M. Lincoln; Ronald
Boulanger; Jeannine Boulanger; Richard E. Mack; Allen
Benello; John M. Cory; Doris M. Cory; Anthony J.
Cardwell; Barbara A. Cardwell; Adelaide M. Marek; Maggie
Boatman; Carol McCollum; Peter M. McCarthy; Richard
Miazga; Anna Maria Miazga; M.S. Shastri; Shanthi Shastri;
Garth Gallagher; Trudy Ann Felicia Peters, a minor; Roy
Burman; Linda Ruth Burman; Clark Phillips; Caroline S.
Sneed; Douglas Phillips; Eva Lorraine Merrill, Plaintiffs-Appellees,
v.
PAN AMERICAN WORLD AIRWAYS, INC.; Pan Am World Services,
Inc.; Alert Management Systems, Incorporated,
Defendants-Appellants.
 No. 262, Docket 91-5037.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 30, 1991.
Decided Dec. 3, 1991.
 
 Richard M. Sharp, Washington, D.C. (Shea & Gardner, of counsel), for defendants-appellants.
 Joel S. Perwin, Miami, Fla. (Podhurst, Orseck, Josefberg, Eaton, Meadow, Olin & Perwin, P.A., of counsel), for plaintiffs-appellees.
 Before CARDAMONE, WALKER and McLAUGHLIN, Circuit Judges.
 BACKGROUND
 McLAUGHLIN, Circuit Judge:
 
 
 1
 This case arises out of a series of events that are as notorious as they are tragic. On December 21, 1988, Pan Am flight 103 en route to New York's Kennedy Airport crashed at Lockerbie, Scotland, killing everyone on board, including numerous college students heading home for the holidays. Wrongful death actions were filed in various federal and state courts. Pursuant to an order of the Judicial Panel on Multidistrict Litigation (the "Judicial Panel"), all the federal cases were transferred for consolidated pretrial proceedings to Chief Judge Thomas C. Platt in the Eastern District of New York. See In re Air Disaster at Lockerbie, Scotland, 709 F.Supp. 231 (J.P.M.L.1989).
 
 
 2
 Before us on appeal are fifty-five wrongful death actions based on Florida law that were filed in the Circuit Court of the Eleventh Judicial Circuit for Dade County, Florida. One of these actions was brought on behalf of a crew member (the "Rosenkranz action");[1] the other fifty-four were brought on behalf of passengers (the "Coker actions").[2] The defendants in all of these actions (collectively, the "Pan Am defendants") are two current and one former subsidiary of Pan Am Corporation: Pan American World Airways, Inc. ("Pan Am"), Pan Am World Services, Inc. ("PAWS"), and Alert Management Systems, Inc. ("Alert").[3]
 
 
 3
 Shortly after they were filed, the Pan Am defendants removed the first two Coker actions to the United States District Court for the Southern District of Florida, arguing that the Warsaw Convention[4] preempted the plaintiffs' state-law actions. Relying on Rhymes v. Arrow Air, Inc., 636 F.Supp. 737 (S.D.Fla.1986), the district court held that the Warsaw Convention is not the exclusive remedy for international air crash disasters. It therefore remanded the cases to state court. See Coker v. Pan Am. World Airways, Inc., Nos. 89-936/7 (S.D.Fla. May 31, 1989). That remand order was not appealable. See 28 U.S.C. § 1447(d).
 
 
 4
 Hedging against the possibility that another court might later hold their state-law claims to be preempted (at which time the statute of limitations for Warsaw Convention claims would likely have run), each of the fifty-four Coker plaintiffs brought a federal action in the Southern District of Florida as a fall-back position asserting a claim under the Warsaw Convention. These actions were stayed on plaintiffs' own request, pending the outcome of their corresponding state-court actions. Having been filed in federal court, however, these fall-back actions were subject to the Judicial Panel's transfer powers. By order dated January 23, 1991, the Judicial Panel transferred the Coker plaintiffs' federal actions from Florida to Chief Judge Platt in the Eastern District of New York. Thus, as matters now stand, each of the Coker plaintiffs has two actions pending: one asserting Warsaw Convention claims before Chief Judge Platt and one asserting state-law wrongful death claims in Florida state court.
 
 
 5
 Throughout this period, the Pan Am defendants were experiencing acute financial difficulties which resulted in their filing voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code (the "Code"), 11 U.S.C. § 1101, et seq., in the United States Bankruptcy Court for the Southern District of New York. With the filing of these petitions for reorganization, all actions against defendants Pan Am and Alert were automatically stayed pursuant to 11 U.S.C. § 362. The bankruptcy court extended the stay to non-debtor defendant PAWS.
 
 
 6
 Shortly after the Pan Am defendants filed for bankruptcy, they moved in the Southern District of New York for an order pursuant to 28 U.S.C. § 157(b)(5) transferring the Florida state-court Coker actions and the Rosenkranz Florida state-court action to the United States District Court for the Southern District of New York. Pan Am contemplated that the transfer to the Southern District of New York, where the bankruptcy proceedings were pending, would shortly be followed by another transfer to the Eastern District of New York where the Judicial Panel had consolidated the Lockerbie actions for pretrial proceedings. In this way, the Pan Am defendants hoped to bring all the Lockerbie cases under one roof before Chief Judge Platt. The motion to transfer under section 157(b)(5) was assigned to Judge Haight. It was vigorously opposed by the Coker and Rosenkranz plaintiffs, who urged Judge Haight to exercise the discretion afforded him, under 28 U.S.C. § 1334(c)(1), to abstain from transferring their Florida state-court cases to the Southern District of New York.
 
 
 7
 After Judge Haight received the parties' briefs and heard their oral arguments, but before he rendered a decision, we issued our decision in In re Air Disaster at Lockerbie, Scotland, 928 F.2d 1267 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). In Lockerbie, we held that state-law causes of action for international airline accidents are indeed preempted by the Warsaw Convention, and that, under the Convention, punitive damages are not available to the plaintiff. Id. at 1270; see also In re Korean Air Lines Disaster, 932 F.2d 1475, 1484 (D.C.Cir.) (following Lockerbie, Warsaw Convention does not permit punitive damages), cert. denied, --- U.S. ----, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).
 
 
 8
 Judge Haight concluded that he should abstain from exercising the court's transfer powers. A crucial factor in the district court's abstention analysis was its concern that Pan Am's two-step transfer plan was "the jurisdictional equivalent of setting sail on uncharted seas." Coker v. Pan Am World Airways, Inc. (In re Pan Am Corp.), 128 B.R. 59, 63 (S.D.N.Y.1991). Because section 157(b)(5) expressly limits transfer of state-court actions to "the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim[s] ar[i]se," 28 U.S.C. § 157(b)(5), it was unclear to Judge Haight whether the Judicial Panel could further transfer such cases pursuant to its powers under 28 U.S.C. § 1407(c). The district court thus concluded that "transfer would lead directly to further legal maneuvering in jurisdictional areas whose boundaries are uncertain, and the only certainty is further delay and expense." 128 B.R. at 65.
 
 
 9
 A second factor in the district court's analysis was its perception of apparent disagreement between the Second and Eleventh Circuits regarding the Warsaw Convention's preemptive effect on the Coker actions.[5] That Second Circuit precedent precludes the Coker state actions, and Eleventh Circuit precedent apparently does not,[6] was seen by the district court as a factor favoring abstention. See 128 B.R. at 65. Finally, the district court found that the proposed transfer was "not necessary ... to make possible the bankruptcy court's effective administration of Pan Am's Chapter 11 proceedings." Id.
 
 
 10
 Because we find that the district court relied on inappropriate considerations in deciding to abstain, we now reverse and remand for further proceedings consistent with this opinion.
 
 DISCUSSION
 
 11
 We first address the appellees' contention that we lack jurisdiction to hear this appeal from a decision to abstain and, that even if we have jurisdiction, we should decline to entertain Pan Am's central argument on appeal because it was not raised below. Both arguments are without merit.
 
 
 12
 We recently addressed the appealability of a district court's decision to abstain under 28 U.S.C. § 1334(c)(1): "[t]he district court's abstention ... could only have been pursuant to § 1334(c)(1).... Nothing prevents appellate review of such an abstention decision." Ben Cooper, Inc. v. Insurance Co. of Pa. (In re Ben Cooper, Inc.), 924 F.2d 36, 38 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); see also Consumer News & Business Channel Partnership v. Dow Jones/Group W Television Co. (In re Financial News Network, Inc.), 931 F.2d 217, 220 (2d Cir.1991) (" 'the finality requirement is less rigidly applied in bankruptcy than in ordinary civil litigation' ") (quoting In re Johns-Manville Corp., 824 F.2d 176, 179 (2d Cir.1987)); Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1283 (2d Cir.1990) ("Congress intended to allow for immediate appeal in bankruptcy cases of orders that 'finally dispose of discrete disputes within the larger case ' ") (quoting Johns-Manville, 824 F.2d at 179). Contrary to the appellees' protestations, Ben Cooper is indistinguishable and we therefore have jurisdiction over this appeal.
 
 
 13
 Arguing that it was not presented to the district court, appellees would have us disregard Pan Am's contention that the district court should not have considered the uncertainty engendered by Pan Am's grand design to eventually engineer the transfer of the Florida cases from the Southern District to the Eastern District of New York. (Pan Am maintains that the second transfer would not have proved necessary in light of our decision in Lockerbie, and, therefore, that Judge Haight's consideration of this factor was erroneous.)
 
 
 14
 Our Lockerbie decision was filed after the parties had submitted their cases to the district court but before the district court rendered its decision. The district court was apprised of the intervening decision, and, indeed, invited the parties to address the impact of Lockerbie. The district court actually discussed Lockerbie in its decision. That neither the parties nor the district court may have fully appreciated the import of Lockerbie is not a reason to disregard it on appeal. See Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals"); see also Ebker v. Tan Jay Int'l, Ltd., 739 F.2d 812, 822 (2d Cir.1984) (" 'when a party raises new contentions that involve only questions of law, an appellate court may consider the new issues' ") (quoting Vintero Corp. v. Corporacion Venezolana de Fomento, 675 F.2d 513, 515 (2d Cir.1982)).
 
 
 15
 Turning to the merits, our review of the district court's decision to abstain pursuant to 28 U.S.C. § 1334(c)(1) is governed by an abuse of discretion standard. See New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers, Ltd.), 924 F.2d 74, 79 (5th Cir.1991); De Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir.1989).
 
 
 16
 Pan Am based its transfer motion on 28 U.S.C. § 157(b)(5), which provides:
 
 
 17
 The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.
 
 
 18
 Despite the apparently mandatory "shall order", section 157(b)(5) has consistently been construed to recognize discretion in district courts to leave personal injury cases where they are pending. In other words, the Bankruptcy Code " 'allows abstention for personal injury cases' and only 'where abstention does not occur' will the requirement for adjudication in a district court take effect." Citibank, N.A. v. White Motor Corp. (In re White Motor Credit), 761 F.2d 270, 273 (6th Cir.1985) (quoting 130 Cong.Rec. S8889 (daily ed. June 29, 1984) (remarks of Senator Dole), reprinted in 1984 U.S.Code Cong. & Admin.News 586, 587); accord A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.), 788 F.2d 994, 1010 (4th Cir.), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); Kadel v. Thompson, 84 B.R. 878, 881 (N.D.Ga.1988).
 
 
 19
 A motion under section 157(b)(5), therefore, requires an abstention analysis. This analysis, however, is colored by the Bankruptcy Code's treatment of personal injury claims against debtors. First, as already discussed above, the language of section 157(b)(5) appears to be mandatory, although it clearly has not been so construed. Second, section 157(b)(4) provides that "[n]on-core proceedings under § 157(b)(2)(B) of title 28 [liquidation of personal injury tort or wrongful death cases], shall not be subject to the mandatory abstention provisions of Section 1334(c)(2)." 28 U.S.C. § 157(b)(4). Even though personal injury cases are not excepted from the Code's permissive abstention provision, we agree with the leading commentator that "the district court, if it elects to abstain and have the claim liquidated in state court, may be contravening the legislative history." 1 L. King, Collier on Bankruptcy p 3.01[b], at 3--82 (15th ed. 1991) (citing 130 Cong.Rec. S7621 (daily ed. June 19, 1984) (remarks of Senator DeConcini)); see also R. Aaron, Bankruptcy Law Fundamentals § 3.03, at 3--42 (1991) ("[t]he apparent intent [of § 157(b)(4) ] is that these personal injury claims should not be returned to the state courts for trial").
 
 
 20
 Finally, the manifest purpose of section 157(b)(5) was "to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.' " Piccinin, 788 F.2d at 1011 (quoting 130 Cong.Rec. H7492 (June 29, 1984) (remarks of Congressman Kastenmeier), reprinted in 1984 U.S.Code Cong. & Admin.News at 579). This is consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's[7] limited jurisdictional scheme. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 43-52 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6004-13; Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984).
 
 
 21
 In sum, Congress has indicated that courts should not be too quick to abstain from exercising their transfer powers under 28 U.S.C. § 157(b)(5). Transfer should be the rule, abstention the exception. That said, we turn to an examination of Bankruptcy Code section 1334(c)(1), which provides:
 
 
 22
 Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
 
 
 23
 28 U.S.C. § 1334(c)(1). The statute thus furnishes three admittedly nebulous criteria to determine whether abstention is appropriate. An examination of the statute's history, however, convinces us that this provision was intended to codify judicial abstention doctrines, particularly with respect to cases like Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).
 
 
 24
 Despite the dearth of legislative history for section 1334(c)(1), it is substantially the same as former section 1471(d) of title 28.[8] See General Am. Communications Corp. v. Landsell (In re General Am. Communications Corp.), 130 B.R. 136, 146 (S.D.N.Y.1991). Thus, the legislative history of former section 1471(d) remains an important reference when construing its successor. See Kelley v. Nodine (In re Salem Mortgage Co.), 783 F.2d 626, 632-33 (6th Cir.1986); General Am. Communications, 130 B.R. at 146; 1 Collier, supra, p 3.01[a], at 3--69.
 
 
 25
 The House Report accompanying the 1978 legislation observes that:
 
 
 26
 in order to insure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases, the bill codifies present case law relating to the power of abstention in particular proceedings by the bankruptcy court.
 
 
 27
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 51 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6012. Therefore, section 1334(c) "summarize[s] and incorporate[s] federal non-bankruptcy abstention doctrines." General Am. Communications, 130 B.R. at 146.
 
 
 28
 Congress thus intended that section 1334(c)(1) be informed by principles developed under the judicial abstention doctrines, and courts have usually looked to these well-developed notions of judicial abstention when applying section 1334(c)(1). See, e.g., Eastern Air Lines, Inc. v. International Ass'n of Machinists & Aerospace Workers (In re Ionosphere Clubs, Inc.), 108 B.R. 951, 954 (Bankr.S.D.N.Y.1989); Baptist Medical Ctr. v. Singh (In re Baptist Medical Ctr.), 80 B.R. 637, 645-46 (Bankr.E.D.N.Y.1987).
 
 
 29
 The legislative history of section 1334(c)(1)'s predecessor specifically identifies the paradigm for abstention:
 
 
 30
 The [discretionary abstention] subsection recognizes the exigencies that arise in such cases as Thompson v. Magnolia Petroleum, 309 U.S. 478 [60 S.Ct. 628, 84 L.Ed. 876] (1940), in which it is more appropriate to have a State court hear a particular matter of State law.
 
 
 31
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 446 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6401.
 
 
 32
 Magnolia Petroleum involved a dispute between a trustee of a bankrupt railroad and other claimants over the right to drill for oil under the railroad's right of way. The dispositive issue of drilling rights could "be decided only by interpretation, under Illinois law, of instruments granting the railroad its right of way." 309 U.S. at 479, 60 S.Ct. at 629. Because the Illinois law was unsettled, the Supreme Court directed the district court to abstain in favor of state-court adjudication. Thus, Magnolia Petroleum and section 1334(c)(1) mandate that a federal court exercising bankruptcy jurisdiction "defer to a State court for determination of a particularly unusual question" of State law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 51 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6012; see also Tomiyasu v. Golden, 358 F.2d 651, 654 (9th Cir.1966) (Magnolia Petroleum "recognized that in some exceptional circumstances difficult and unanswered questions of state law should be deferred to state forums"); General Am. Communications, 130 B.R. at 146 ("[g]iven the genesis of section 1334(c)(1), it is not surprising that the primary determinant for the exercise of discretionary abstention is whether there exist unsettled issues of state law").
 
 
 33
 No one has suggested that the Coker actions present the type of difficult questions of state law Congress contemplated when it codified Magnolia Petroleum. To the contrary, if there is any dispositive issue in these actions, it is a federal question: whether the Warsaw Convention preempts the Coker plaintiffs' state-law causes of action.
 
 
 34
 Although the Supreme Court has developed several distinct abstention doctrines,[9] they share a common matrix: "a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 1527 n. 9 (1987); see also 130 Cong.Rec. 17157 (June 19, 1984) ("comity between Federal and State courts depends upon the mutual respect that each of those divisions of the national judiciary has for the jurisdiction of the other") (remarks of Senator Dole; discussing abstention in bankruptcy proceedings). The abstention doctrines thus manifest federal respect for State law and policy.
 
 
 35
 These concerns, however, are not implicated when federal questions are presented since supremacy clause questions are "essentially one[s] of federal policy." Hagans v. Lavine, 415 U.S. 528, 550, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974). We therefore have observed that "[a]bstention ... is not appropriately invoked in a preemption case." Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323, 326 n. 2 (2d Cir.1982), aff'd sub nom. Arcudi v. Stone & Webster Eng'g Corp., 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983); accord Christ the King Regional High School v. Culvert, 815 F.2d 219, 223 n. 4 (2d Cir.), cert. denied, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 329 (2d Cir.1985), aff'd sub nom. Roberts v. Burlington Indus., Inc., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); see also De Cisneros v. Younger, 871 F.2d 305, 308 (2d Cir.1989) ("[w]hen the applicable substantive law is federal, abstention is disfavored"); cf. Colorado River, 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21 ("the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention"). "The underlying rationale of this doctrine is that it would be futile to abstain in deference to a state decisional body if it later should develop that it may not have jurisdiction over a dispute due to the preemptive jurisdiction of a federal body." Culvert, 815 F.2d at 223 n. 4.
 
 
 36
 This rationale applies with even greater force in the bankruptcy context: scarce debtor resources should not be squandered litigating in state court when such litigation may later be found to have been preempted by federal law. A presumption against abstention when there are preemption issues thus serves the best interests of debtors and their creditors. This general principle seems particularly apt here because only recently we settled the issue of the Warsaw Convention's preemptive effect, see Lockerbie, 928 F.2d at 1270, while the Florida courts have not.
 
 
 37
 Even if we had not decided the issue, however, the Florida courts would not be entitled to any particular deference in interpreting federal law; "the notion of 'comity' ... is 'not strained when a federal court cuts off state proceedings that entrench upon the federal domain.' " Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n, 791 F.2d 1111, 1117 (3d Cir.1986) (quoting Middle S. Energy, Inc. v. Arkansas Pub. Serv. Comm'n, 772 F.2d 404, 417 (8th Cir.1985), cert. denied, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986)). Therefore, the district court should not have anchored its decision to abstain on the possibility that the Florida courts might decide Pan Am's preemption claim differently from us.
 
 
 38
 Nor are we moved by the argument that the district court should accept or at least defer to precedent in the Southern District of Florida (precedent that is contrary to our decision in Lockerbie ).[10] We agree that a " 'transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit.' " In re Korean Air Lines Disaster, 829 F.2d 1171, 1174 (D.C.Cir.1987) (quoting Marcus, Conflict Among Circuits and Transfers Within the Federal Judicial System, 93 Yale L.J. 677, 721 (1984)), aff'd, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989); see also H.L. Green Co. v. MacMahon, 312 F.2d 650, 652 (2d Cir.1962) ("federal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case"), cert. denied, 372 U.S. 928, 83 S.Ct. 876, 9 L.Ed.2d 736 (1963). Of course, Lockerbie made the preemption determination for the district courts in the Second Circuit; they are bound to apply that decision even if other circuits may have different views.
 
 
 39
 The district court also premised its decision to abstain on its view that "transfer would lead directly to further legal maneuvering in jurisdictional areas whose boundaries are uncertain." 128 B.R. at 65. This observation was accurate with respect to Pan Am's transfer strategy to the extent it contemplated (1) transfer of the Coker actions to the Southern District of New York pursuant to 28 U.S.C. § 157(b)(5), and (2) their subsequent transfer to Chief Judge Platt in the Eastern District of New York pursuant to 28 U.S.C. § 1407.
 
 
 40
 We agree with Pan Am, however, that our Lockerbie decision altered the district court's decisional calculus by obviating the need for the second transfer, which admittedly raised difficult jurisdictional issues. In light of Lockerbie, the district court could have transferred the Coker actions to itself and then dismissed them, as Lockerbie mandates; after Lockerbie, there was no need to transfer the cases to Chief Judge Platt. Thus, the district court erred by premising its decision to abstain on the uncertainty engendered by Pan Am's original two-step transfer proposal.
 
 
 41
 Reviewing the district court's decision, it is not apparent to what extent it relied on its observation that:
 
 
 42
 it is not necessary to transfer the Florida cases to this district under § 157(b)(5) to make possible the bankruptcy court's effective administration of Pan Am's Chapter 11 proceedings. Bankruptcy Judge Blackshear already holds that supervisory power; indeed, he has already exercised it by continuing the stay of trials of the Lockerbie actions both in the multidistrict litigation [in] federal district court, and in the Florida state court.
 
 
 43
 128 B.R. at 65. To the extent these statements imply that the standard for invoking section 157(b)(5)'s transfer power is one of necessity, they are without support in the Code or in its legislative history, and are erroneous.
 
 
 44
 Congress armed the district courts and the bankruptcy courts with an arsenal of substantive and procedural powers to enable them to administer bankruptcy cases more efficiently than was possible under the former Bankruptcy Act. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 48-49 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6010; S.Rep. No. 989, 95th Cong., 2nd Sess. 17 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5803; see also 1 Collier, supra, p 3.01[a], at 3--6 ("need to expand the jurisdiction of the bankruptcy courts may have furnished the impetus to reform in the first place"). That the availability of these various tools should militate against the exercise of any particular power is perverse. Congress' goal was to provide the federal courts with procedures to facilitate administration of bankruptcy cases. Requiring a showing of necessity imposes too strict a standard.
 
 
 45
 In sum, with respect to the Coker actions, we reverse the district court's decision to abstain from exercising its transfer powers pursuant to 28 U.S.C. § 157(b)(5) and remand to that court for reconsideration of Pan Am's motion. In so doing, we emphasize that district courts enjoy wide discretion when deciding whether to exercise their transfer powers or to abstain. See Ernst v. Oberferst, 166 F.2d 519, 523-24 (2d Cir.1948); 1 J. Moore & L. King, Collier on Bankruptcy p 2.07, at 166 (14th ed. 1974). Their decisions, however, must be informed by legitimate considerations.
 
 
 46
 Because the Rosenkranz action involves a crew member, and not a passenger, it is not governed by the Warsaw Convention, see Sulewski v. Federal Express Corp., 933 F.2d 180, 184-85 (2d Cir.1991), nor is it affected by our Lockerbie decision. If, therefore, Rosenkranz is to be consolidated with all the others in the Eastern District of New York, Pan Am will have to resort to its imaginative two-step transfer plan--a course which is certain to engender further delay and expense. Thus, the district court did not abuse its discretion by abstaining from exercising its power to transfer the Rosenkranz action and we affirm that portion of the district court's order.CONCLUSION
 
 
 47
 Accordingly, we affirm that portion of the district court's order abstaining from exercising its power to transfer the Rosenkranz action. Because the district court premised its decision to abstain from transferring the Coker actions on improper considerations, we reverse that portion of its decision and remand for reconsideration of Pan Am's motion in accordance with the principles set forth in this opinion.
 
 
 
 [1]
 Rosenkranz v. Pan Am. World Airways, Inc., No. 89-58581 (Fla.Cir.Ct.)
 
 
 [2]
 Coker, et al. v. Pan Am. World Airways, Inc., No. 89-14025 (Fla.Cir.Ct.)
 
 
 [3]
 PAWS has been sold pursuant to an agreement which indemnified the purchaser for, among other things, any costs or damages which might arise out of the Lockerbie tragedy. The parties have therefore stipulated that claims against PAWS are to "be deemed to be claims against Debtors for purposes of the automatic stay, this stipulation, and the Debtors' plan of reorganization."
 
 
 [4]
 Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, reprinted at 49 U.S.C.App. § 1502 note, Warsaw Convention. "As an international treaty to which the United States is a member, the Warsaw Convention is ' "equal in stature and force to the domestic laws of the United States." ' " Sulewski v. Federal Express Corp., 933 F.2d 180, 182 (2d Cir.1991) (citations omitted)
 
 
 [5]
 The district court noted that "it is fair to say [the plaintiffs] resist Pan Am's motion in part because they perceive that Florida law favors their interests." 128 B.R. at 64. By the same token, Pan Am's persistent attempts to transfer these cases to Chief Judge Platt was no doubt influenced by his holding that punitive damages were not recoverable under the Warsaw Convention. See In re Air Disaster in Lockerbie, Scotland, 733 F.Supp. 547, 554 (E.D.N.Y.1990), aff'd, 928 F.2d 1267 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); accord In re Korean Air Lines Disaster, 932 F.2d 1475, 1484 (D.C.Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991); Floyd v. Eastern Airlines, Inc., 872 F.2d 1462, 1489 (11th Cir.1989), rev'd on other grounds, --- U.S. ----, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). Although the Realpolitik of high stakes litigation does not escape us, our duty is to ascertain and implement congressional intent, as expressed in 28 U.S.C. §§ 157(b)(5) and 1334(c)(1)
 
 
 [6]
 Eleventh Circuit law controls Pan Am's ability to remove the Coker actions to federal court on the ground that federal law preempts Florida law. While the Eleventh Circuit has not spoken on whether the Warsaw Convention preempts state law, see Floyd, 872 F.2d at 1482, the weight of authority in the Southern District of Florida appears to be contrary to our holding in Lockerbie. See, e.g., Rhymes v. Arrow Air, Inc., 636 F.Supp. 737 (S.D.Fla.1986) (state law claims not preempted); accord Alvarez v. Aerovias Nacionales de Colombia, S.A., 756 F.Supp. 550 (S.D.Fla.1991); Calderon v. Aerovias Nacionales de Colombia, Avianca, Inc., 738 F.Supp. 485 (S.D.Fla.1990), appeal dismissed, 929 F.2d 599 (11th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991). But see Velasquez v. Aerovias Nacionales de Colombia, 747 F.Supp. 670, 676-77 (S.D.Fla.1990) ("Warsaw Convention creates the exclusive cause of action in wrongful death cases"); cf. St. Paul Ins. Co. v. Venezuelan Int'l Airways, Inc., 807 F.2d 1543, 1546 (11th Cir.1987) ("Warsaw Convention creates the cause of action ... and is the exclusive remedy against international air carriers for lost or destroyed cargo")
 
 
 [7]
 Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (1898), repealed by Pub.L. No. 95-598, 92 Stat. 2549 (1978)
 
 
 [8]
 See Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 241(a), 92 Stat. 2549, 2668 (formerly codified at 28 U.S.C. § 1471(d)) (repealed 1984). The jurisdictional provisions of the Bankruptcy Code were overhauled by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (1984), enacted in response to the Supreme Court's decision in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)
 
 
 [9]
 See, e.g., Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813-17, 96 S.Ct. 1236, 1244-46, 47 L.Ed.2d 483 (1976); Younger v. Harris, 401 U.S. 37, 43-54, 91 S.Ct. 746, 750-55, 27 L.Ed.2d 669 (1971); Burford v. Sun Oil Co., 319 U.S. 315, 317-18, 63 S.Ct. 1098, 1098-99, 87 L.Ed. 1424 (1943); Railroad Comm'n v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). See generally E. Chemerinsky, Federal Jurisdiction 553-676 (1989)
 
 
 [10]
 It should be recalled that the United States District Court for the Southern District of Florida remanded the initial two Coker actions to state court after Pan Am had removed them. This remand was based on decisions by the district court that the Warsaw Convention does not preempt state-law wrongful death claims. The decision to remand was not appealable and the Eleventh Circuit has not decided the preemption issue. See supra note 6