In re LUIS ELECTRICAL
CONTRACTING CORP.,
Debtor.

C. Steven HACKELING, Trustee of the
Estate of Luis Electrical Contracting
Corp., Plaintiff,

v.

RAEL AUTOMATIC SPRINKLER
CO., INC., Defendant.

Bankruptcy No. 888–80242–20.
Adv. No. 890–8162–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Oct. 29, 1992.

Levine, Weinberg, Kaley & Pergament, P.C., Garden City, NY, for trustee.

Turnstead, Schechter & Torre, New York City, for defendant.

## DECISION AND ORDER ON MOTION FOR NONCORE DECLARATION AND ABSTENTION

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court upon a motion ("Motion") by Rael Automatic Sprinkler Co., Inc., the defendant ("Defendant") in the above-captioned adversary proceeding ("Adversary Proceeding") for an order of the Court declaring the Adversary Proceeding non-core and abstaining from determining the matter. Luis Electrical Contracting Corp., the above-referenced debtor ("Debtor"), filed a petition for bankruptcy relief under chapter 7 of title 11, United States Code ("title 11" and sometimes, the "Bankruptcy Code") on or about March 10, 1988. The Adversary Proceeding was commenced on or about May 15, 1990, by C. Steven Hackeling, chapter 7 trustee ("Trustee") of the Debtor's estate. Pursuant to the Adversary Proceeding, the Trustee seeks to recover from the Defendant $906,000 plus interest, costs, fees and disbursements, for breach of contract and nonpayment of matured promissory notes.

The Court has jurisdiction over this Motion pursuant to section 157(a), (b)(3) and 1334(a), (c) of title 28, United States Code ("title 28") and the order or referral of matters to the bankruptcy judges by the Eastern District of New York (Weinstein, C.J.) (1986). The Motion is made (i) pursuant to section 157(b)(3) of title 28, which provides that the bankruptcy judge shall determine, on timely motion of a party, whether a proceeding is a core proceeding under section 157(b)(2) of title 28 or is a proceeding that is otherwise related to a case under title 11; and (ii) pursuant to section 1334(c) which provides for both discretionary and mandatory abstention of certain matters.

For the reasons set forth below, the Motion is **GRANTED,** and the Court concludes that it will **ABSTAIN** from hearing and determining the Adversary Proceeding.

### FACTS

From the Court's files and the papers submitted in support and in opposition to the Motion, the Court makes the following findings of fact.

The Trustee commenced the Adversary Proceeding by filing a complaint ("Complaint") which contains three causes of action. The Complaint alleges an agreement ("Agreement") between the Debtor and the Defendant whereby the Debtor was to furnish and render electrical contracting services, labor, and materials in return for payment from the Defendant.

The Trustee's first cause of action alleges that the agreed price and reasonable value of the labor and materials the Debtor satisfactorily provided was $1,350,000, but that as of March 1, 1988, notwithstanding the Debtor's demands, the Defendant refused to pay at least $350,000 of this sum, and as a result the Debtor has suffered damages of at least that amount plus interest.

The Trustee's second cause of action alleges that the Defendant breached its contract with the Debtor by refusing to pay for the services and materials provided by the Debtor, damaging the Debtor in the amount of at least $350,000, plus interest.

The Trustee's third cause of action alleges that the Defendant acknowledged its obligation to the Debtor by executing a series of promissory notes which have matured and,

despite the Debtor's due demand, the Defendant has failed to pay, damaging the Debtor in the amount of at least $206,000, plus interest.

The Defendant's first responsive paper is the within Motion for an order of the Court declaring the Adversary Proceeding a noncore matter and abstaining from deciding it.

## DISCUSSION

### Characteristics of Core and Noncore Proceedings

■ Title 28 provides the bankruptcy judge with the jurisdictional authority to hear and determine those proceedings which have been termed "core proceedings" and which arise under the Bankruptcy Code or in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Core proceedings include, but are not limited to, those proceedings set forth in section 157(b)(2) [1] of title 28. Core proceedings include matters which were traditionally deemed inherently within the bankruptcy courts' jurisdiction. *Walsh v. Abrams (In re HBG Servicenter, Inc.)*, 45 B.R. 668, 671 (Bankr.E.D.N.Y.1985).

■ Noncore proceedings involve disputes over rights that, in distinction, have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case. *E.g., Acolyte Elec. Corp. v. N.Y. (In re Acolyte Elec. Corp.)*, 69 B.R. 155, 162 (Bankr.

E.D.N.Y.1986), *order aff'd*, 1987 WL 47763 (E.D.N.Y.1987); 28 U.S.C. § 157(b)(3) (A noncore proceeding does not arise under title 11 but "is otherwise related to a case under title 11".). The clearest example of a noncore proceeding is a proceeding not inherently related to the bankruptcy field, and which could not have been brought in a federal court absent the bankruptcy case since the parties are not diverse and no federal question has been presented for adjudication. *See, e.g., Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion) (breach of contract action).

■ The Court will determine whether the Trustee's Adversary proceeding is core or noncore using the guidance provided by the United States Court of Appeals for the Second Circuit:

> The relevant inquiry is whether the nature of this adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power.

*Gulf States Explor. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389 (2d Cir.1990) (citing *Wood v. Wood (In re Wood )*, 825 F.2d 90, 97 (5th Cir.1987); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 169 (1st Cir.1987)).

---

1. Section 157(b)(2) states:

Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate and estimation of claims or interests for the proposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2).

The Court will separately analyze and determine whether each of the Trustee's three causes of action is a core proceeding.

## A. The Trustee's First Cause of Action

■ The Trustee's first cause of action alleges that the Debtor satisfactorily provided labor and materials to the Defendant pursuant to the Agreement between them. It is alleged that the price of the labor and materials was set forth in the Agreement as $1,350,000. The Trustee alleges that $350,000 remains due and owing from the Defendant.

The nature of the first cause of action in this Adversary Proceeding does not "fall within the core of federal bankruptcy power." *Manville.* The Trustee's first cause of action is either an action for breach of contract or an action for restitution. It is a breach of contract cause of action if the Debtor chooses to sue on (thereby enforcing) a contract that the Debtor alleges to be valid. Alternatively, it is an action for restitution based upon the Defendant's unjust enrichment if the Debtor chooses not to enforce the contract (or if no enforceable contract existed) and to sue in quasi-contract for the value of the benefits received (quantum meruit). Either theory upon which the first cause of action is based, however, is founded upon simple state law rights. Accordingly, this first cause of action requires the "adjudication of state-created private rights." *Manville*, 896 F.2d at 1389 (quoting *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871 (Brennan, J.)).

Because the federal bankruptcy power is in no way required for the adjudication of the Trustee's first cause of action, and the action clearly does not arise under title 11 nor falls within any of the listed core proceedings in section 157(b)(2), (quoted in full supra at note 1), the Court holds that it is a noncore proceeding.

## B. The Trustee's Second Cause of Action

The Trustee's second cause of action states: "Defendant Rael has *breached its contract* with [the Debtor] by refusing to pay for services and materials provided by [the Debtor]." Trustee's Complaint at 3 (emphasis added).

A breach of contract cause of action exclusively requires the adjudication of state-created rights. *See Marathon.* The federal bankruptcy power does not give rise to this action nor will it be employed. Therefore, the Court holds that the Trustee's second cause of action is a noncore proceeding.

## C. The Trustee's Third Cause of Action

■ In the Trustee's third cause of action against the Defendant, it is alleged that the Defendant acknowledged its obligation(s) to the Debtor by executing a group of promissory notes ("Notes"). The Notes came due on several dates between December 15, 1987 and June 14, 1988. The Trustee alleges that the Defendant has failed and refused to make payment on the Notes, despite the Debtor's demand, and as a result the Debtor has been damaged in the sum of at least $206,000, plus interest.

Only certain of the Notes matured and became payable pre-petition, others carried postpetition maturity dates. The Court will first address whether the Trustee's cause of action to collect the Notes which matured prepetition is a core proceeding.

■ The creation of a promissory note, as well as the liability of the maker in an action brought for its enforcement, is governed by state law. If the promissory note is negotiable, the New York Uniform Commercial Code applies. N.Y.U.C.C. § 3–805 (Article 3 "applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within [Article 3] but which is not payable to order or to bearer. . . ."). If the promissory note is nonnegotiable, its creation, validity and enforcement are governed by state contract law. *O'Brien v. O'Brien*, 16 N.Y.S.2d 799, 802 (Civ.Ct.1939) ("[N]on-negotiable bills and notes have a validity and an effect of their own as common-law contracts, and a note may be valid as a non-negotiable instrument although it does not contain all the provisions necessary to make it negotiable.") (citation omitted).

Accordingly, the Trustee's cause of action for enforcement of the Notes which matured prepetition is exclusively governed by state

law. The federal bankruptcy power did not give rise to this cause of action nor will it be employed. Therefore, the Court holds that the Trustee's third cause of action which seeks enforcement of the Notes which became due and payable prepetition is a non-core proceeding.

As to that part of the third cause of action which seeks enforcement of the Notes which matured postpetition, the Trustee contends that the proceeding must be core. The Trustee argues that the recovery of liquidated claims accruing postpetition is "ipso facto a core proceeding." Trustee's Memorandum of Law at 3. This argument is really twofold: The third cause of action is a core proceeding because the Debtor's claims accrued postpetition, and because the Debtor's claims are liquidated. The Court will first discuss the Trustee's argument that this is a core proceeding because the Debtor's cause of action arose postpetition.

It is true that in this Circuit and others, courts have held that causes of action based upon postpetition transactions with a debtor constitute core proceedings even though the same causes of action would constitute non-core proceedings had the transactions taken place prepetition. *E.g., Ben Cooper, Inc. v. Insurance Co. of Pa. (In re Ben Cooper, Inc.),* 896 F.2d 1394, 1399–400 (2d Cir.1990), *cert. granted,* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779, *judg't vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408, *opinion and judg't reinstated by* 924 F.2d 36, 38 (2d Cir.1991), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (hereinafter *Ben Cooper* ) (citing *Rafoth v. National Union Fire Ins. Co. of Pitt., Pa. (In re Baker & Getty Fin. Servs., Inc.),* 88 B.R. 137, 139–40 (Bankr.N.D.Ohio 1988), *appeal on other grounds decided by* 954 F.2d 1169 (6th Cir. 1992); *Franklin Comp. Corp. v. Apple Comp. Corp. (In re Franklin Comp. Corp.),* 60 B.R. 795, 800–01 (Bankr.E.D.Pa.1986)); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 168 (1st Cir.1987). These courts' holdings derive from the theory that causes of action accruing from postpetition transactions with a debtor are matters which concern the administration of the estate. Pursuant to section

157(b)(2)(A) of title 28, "matters concerning the administration of the estate" are core proceedings. Thus, in *Cooper,* the Second Circuit Court of Appeals wrote:

> Post-petition contracts with the debtor-in-possession ... are integral to the estate administration from the date they are entered into.... We hold, therefore, that the bankruptcy court has core jurisdiction, pursuant to § 157(b)(2)(A), over contract claims under state law when the contract was entered into post-petition. We read *Marathon* to apply to claims arising *pre*-petition, and decline to apply that ruling to claims involving contracts entered into post-petition.

*Cooper,* 896 F.2d at 1399–400 (emphasis in original) (citations omitted). In *Arnold,* the First Circuit Court of Appeals illustrated the logic of this line of holdings:

> [A] party who contracts with an apparently healthy company—a company that has not filed a petition in bankruptcy—may find it unpleasantly surprising to have to defend its prepetition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court. Parties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise.

*Arnold,* 815 F.2d at 170 (emphasis in original) (citation omitted).

The Court acknowledges that "matters concerning the administration of the estate" plausibly, in some circumstances, encompasses the adjudication of disputes arising from postpetition activities. For example, postpetition transactions with a debtor, not otherwise authorized by the Bankruptcy Code, should be approved by the bankruptcy court. *See, e.g.,* 11 U.S.C. § 549(a) (allows trustee/debtor to avoid postpetition transfers of estate property if not authorized by the court or the Bankruptcy Code). It follows that any disputes arising from these transactions should be resolved in the same forum. The

rationale is that the debtor and the party with whom the debtor contracted reasonably expect the same forum that approved their transactions adjudicate any disputes that arise therefrom. In *Cooper*, the Second Circuit clearly holds that these disputes are core proceedings because "[t]he adjudication of such claims is an essential part of administering the estate." *Cooper*, 896 F.2d at 1400.

In the case at bar, however, the rationale of *Cooper* and *Arnold* does not apply. The transactions between the Defendant and the Debtor took place prepetition. It is the alleged *breaches* that have taken place postpetition. In fact, of the seven payments the Trustee alleges to be due under the Notes, only three became due postpetition. For the most part, therefore, the allegations contained in the within Adversary Proceeding involve prepetition events: The prepetition execution of the Agreement/contract; prepetition performance by the Debtor; prepetition execution of the Notes; and prepetition default of four payments on the Notes by the Defendant. The only postpetition activity between the Debtor and the Defendant that is alleged is the Defendant's defaults under the three Notes which became due postpetition. These alleged postpetition defaults by the Defendant do not constitute "disputes arising from postpetition transactions with a debtor" which come within the purview of *Cooper* and *Arnold* and which constitute matters concerning the administration of the estate. Accordingly, the Court holds that the postpetition characteristic of three of the Defendant's alleged defaults does not render core the third cause of action.

The Trustee's alternative basis for asserting that the third cause of action is a core proceeding is that the Debtor's claims are liquidated.

■ The liquidated nature of a debtor's claims does effect the core/noncore analysis in certain cases. If a debtor's claim is liquidated and thus indisputable, it could perhaps constitute a claim for the turnover of property of the estate, or a proceeding affecting the liquidation of the assets of the estate, both core proceedings under section 157(b)(2)(E), (O). An examination of the Trustee's third

cause of action indicates, however, that the Debtor's claim is not genuinely liquidated.

The Debtor alleges it has made due demands for payment of the matured Notes. In response, the Defendant alleges defenses. The defenses include payment by the Defendant and the alleged failure to timely, fully and satisfactorily perform the underlying contract by the Debtor. Defendant's Reply Memorandum of Law at 1–2.

Even under the best of circumstances, the Debtor takes the Notes subject to the Defendant's valid defenses, if any.

In a best case scenario, the Debtor establishes that (i) the Notes are negotiable instruments pursuant to the requisites set forth in section 3–104 of the New York Uniform Commercial Code ("U.C.C."); (ii) the Debtor took the Notes by negotiation so as to become a holder thereof under U.C.C. sections 1–201(20) and 3–202; (iii) the Debtor became a holder in due course by complying with the requirements of U.C.C. section 3–302; and (iv) the Debtor establishes that none of the Defendant's defenses is a so-called "real defense" to which a holder in due course is not immune under U.C.C. section 3–305. Notwithstanding the Debtor's successfully proving this set of circumstances, the Debtor still takes subject to all defenses of the Defendant because the Defendant is a party to the Notes with whom the Debtor has dealt. N.Y.U.C.C. § 3–305(2). Under U.C.C. section 3–305(2), a holder in due course take an instrument "free from . . . all defenses of any party to the instrument with whom the holder has *not* dealt." *Id.* (emphasis added). The Debtor has clearly dealt with the Defendant and therefore takes the Notes subject to any of the Defendant's valid defenses. For this reason and because the best case scenario as well as the legitimacy of the Defendant's alleged defenses must all be actually litigated, the Debtor's claims on the Notes are not liquidated. Hence, the third cause of action is not core on the theory that the Debtor's claims are liquidated.

The Court holds that the third cause of action seeking enforcement of the Notes which became payable postpetition is a noncore proceeding. Thus, all causes of action

alleged in the Adversary Proceeding are non-core matters.

## ABSTENTION

### The Court's Authority to Adjudicate an Abstention Motion

■ The Defendant has also requested that the Court abstain from determining the Trustee's Adversary Proceeding. Defendant's abstention motion is made on alternative bases pursuant to title 28's section 1334, parts (c)(1) (discretionary abstention) and (c)(2) (mandatory abstention) and is governed by Rule 5011(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

Pursuant to a 1991 amendment to Bankruptcy Rule 5011(b), the Court finds that on a motion for mandatory abstention under section 1334(c)(2) (set forth in full infra at 13) the bankruptcy court is no longer restricted to the filing of a report and recommendation for its disposition, but may enter a final order which is appealable to the district court. *E.g., Southerland v. Smith,* 136 B.R. 565, 566 (M.D.Fla.1992) (bankruptcy court order exercising abstention and dismissing complaint is final order appealable to district court) (citing 28 U.S.C. § 158(a), *Suburban Bank of Cary Grove (In re Riggsby)*, 745 F.2d 1153, 1154 (7th Cir.1984)); *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 778 (Bankr. S.D.Ohio 1991) (bankruptcy court is authorized to enter final order on abstention motion); *Blackburn v. Blue Cross & Blue Shield of North Ohio (In re GF Corp.)*, 127 B.R. 384, 385 (Bankr.N.D.Ohio); *see Holtzclaw v. State Farm Fire and Cas. Co. (In re Holtzclaw)*, 131 B.R. 162, 164 (E.D.Cal.1991) (district court remanded bankruptcy court's report and recommendation on discretionary abstention motion, and directed bankruptcy court to enter final order on issue instead).

Section 1334(c)(1) (set forth in full infra at 367), the discretionary abstention section, speaks only to the district court's ability to discretionarily abstain from hearing a proceeding. The Court finds that it may enter a final order on a motion made pursuant to this section due to the grants of authority to the bankruptcy judges by virtue of sections 151 and 157 of title 28, and the order of referral of matters to the bankruptcy judges by the Eastern District of New York (Weinstein, C.J.) *(reprinted in Acolyte Elec. Corp. v. N.Y. (In re Acolyte Elec. Corp.)*, 69 B.R. 155, 186 (Bankr.E.D.N.Y.1986), *order aff'd,* 1987 WL 47763 (E.D.N.Y.1987)). *Double TRL, Inc. v. F.S. Leasing, Inc. (In re Double TRL, Inc.)*, 65 B.R. 993, 1002 (Bankr.E.D.N.Y. 1986) ("[I]t would seem most consistent with the overall [Bankruptcy Amendments and Federal Judgeship Act] jurisdictional scheme and particularly 28 U.S.C. §§ 151 and 157, that the adjudication of abstention issues should be made by the bankruptcy judge in the first instance, subject to district court review.") (numerous citations given). Also, we believe it is most practical for the bankruptcy court to adjudicate and address the bases asserted for abstention in the first instance. *See* Fed.R.Bankr.P. 5011 advisory committee's note (1987) (abdicated in part by Fed.R.Bankr.P. 5011 advisory committee's note (1991)) ("The bankruptcy judge ordinarily will be in the best position to evaluate the grounds asserted for abstention.").

Accordingly, the Court will rule upon the Defendant's Motion. Mandatory abstention will be discussed first.

### Mandatory Abstention

Section 1334(c)(2) of title 28 states, in relevant part:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

The Court will apply the attributes of the Adversary Proceeding to section 1334(c)(2)'s

multipart test to determine whether mandatory abstention is required.

(i) The Defendant's Motion for an order of abstention was made at the earliest possible stage of the within Adversary Proceeding, it being the Defendant's first pleading, filed in lieu of an answer. Therefore, the Court finds that the Defendant's Motion was timely made.

(ii) The Adversary Proceeding, as determined by the Court above, is a proceeding based upon a state law claim or state law cause of action. It clearly did not arise under title 11 or arise in a case under title 11, and is merely related to the within case under title 11. It consists of a simple breach of contract action and an action to enforce certain promissory notes and accordingly is founded solely upon state law. Moreover, since the causes of action asserted have not been established or alleged to be a principal or sole asset of the Debtor, or to be integral to the estate or to the Debtor's formulation of a feasible plan of reorganization, their nexus to the Debtor's bankruptcy case is minimal.

(iii) The Adversary Proceeding is an action which could not have been commenced in a court of the United States absent jurisdiction under section 1334 since neither diversity of citizenship (between the Debtor and the Defendant), federal question, nor any other basis for federal subject matter jurisdiction exists.

(iv) An action asserting the identical causes of action, however, has not been commenced in a state forum of appropriate jurisdiction. The majority of courts that have addressed this prong of section 1334(c)(2)'s test have held that a comparable *pending* state court action is a prerequisite for mandatory abstention. *E.g., Rivera v. Telemundo Group,* 133 B.R. 674, 676 (D.P.R.1991); *First Nat. Bank of Westminster v. Rarick (In re Rarick)*, 132 B.R. 47, 50 (D.Colo.1991); *Bates & Rogers Constr. Corp. v. Continental Bank, N.A.,* 97 B.R. 905, 908 (N.D.Ill.1989); *Foster v. Farmers and Merch. Bank of Eatonton (In re Foster)*, 105 B.R. 746, 749 (Bankr. M.D.Ga.1989); *Kolinsky v. Russ (In re Russ)*, 100 B.R. 695, 704 (Bankr.S.D.N.Y. 1989) ("All of the district court cases dealing with this point have ruled that mandatory abstention requires a case to be pending in an appropriate forum.... Similarly, most of the bankruptcy court judges have required a pending state court action as a condition for mandatory abstention.") (citations omitted). But a minority of opinions deny that a case must be pending and instead require only that one *can* be timely commenced. *World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 609–612 (Bankr.S.D.Cal. 1988); *Dakota Grain Sys., Inc. v. Rauser Constr., Inc. (In re Dakota Grain Systems, Inc.)*, 41 B.R. 749, 750 (Bankr.D.N.D.1984); see *Seale v. Owens,* 134 B.R. 181, 185 (E.D.La.1991) (providing no discussion but stating that this part of the test only requires that "the court find[ ] that a timely resolution of the claim can occur in state court").

It is not now necessary for the Court to address whether section 1334(c)(2) requires that a state court action be pending at the time a mandatory abstention motion is made, or requires only that a state court action could be timely commenced. The result which would be obtained, were the mandatory abstention test satisfied, is obtained under the discretionary abstention test (as discussed below); therefore, the Court declines to rule upon this issue.

**Discretionary Abstention**

The Court notes initially that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). However, the failure of one factor in the mandatory abstention test indicates that discretionary abstention should be given "serious consideration". *Marcus Dairy, Inc. v. Belford (In re Naugatuck Dairy Ice Cream, Co.)*, 106 B.R. 24, 29 n. 5 (Bankr.D.Conn.1989) (citing, *e.g., In re Titan Energy, Inc.,* 837 F.2d 325, 333 n. 14 (8th Cir.1988)). *See also First Nat. Bank of Westminster v. Rarick (In re Rarick )*, 132 B.R. 47, 52 (D.Colo.1991); *Wolser v. Joshua Slocum, Ltd. (In re Joshua Slocum, Ltd.)*, 109 B.R. 101, 107 (E.D.Pa.1989) (where all but one of the elements of mandatory abstention are satisfied, "bankruptcy courts should have careful consideration whether it would

be appropriate to exercise their discretion to abstain under § 1334(c)(1).") (quoting *U.I.U. Health and Welfare Fund v. Levit (In re Futura Indus., Inc.)*, 69 B.R. 831, 834 (Bankr.E.D.Pa.1987) (citation omitted)).

Section 1334(c)(1) of title 28 provides for discretionary (sometimes referred to as permissive) abstention. The section states:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

The Second Circuit Court of Appeals recently discussed the application of section 1334(c)(1) in *Coker v. Pan Am. World Air., Inc. (In re Pan Am. Corp.)*, 950 F.2d 839 (2d Cir.1991). The *Coker* court looked first for the existence of legislative history on section 1334(c)(1) in an attempt to gain insight on its proper application. Finding little helpful material, the court looked to the legislative history of the section's predecessor, former section 1471 of title 28, which contained substantially the same language. The court quoted from the language contained in the House Report accompanying section 1471:

> [I]n order to insure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases, the bill codifies present case law relating to the power of abstention in particular proceedings by the bankruptcy court.

*Coker*, 950 F.2d at 846 (quoting H.R.Rep. No. 595, 95th Cong., 2nd Sess. 51 (1978), *reprinted in* U.S.Code Cong. & Admin.News pp. 5787, 5963, 6012 (1978)). *Coker* states that this legislative language explains that section 1334(c) "summarize[s] and incorporates federal non-bankruptcy abstention doctrines." *Coker*, 950 F.2d at 846 (quoting *General Am. Comms. Corp. v. Landsell (In re General Am. Comms. Corp.)*, 130 B.R. 136, 146 (S.D.N.Y.1991)).

■ Thus, section 1334(c)(1) is the statutory codification of the judicial abstention doctrine. *Id.* Congress intended that courts, in addressing abstention motions and the application of section 1334(c)(1), look to the well-developed notions of judicial abstention. *Id.* (citing *Eastern Air Lines, Inc. v. International Ass'n of Machinists Aerospace Workers (In re Ionosphere Clubs, Inc.)*, 108 B.R. 951, 954 (Bankr.S.D.N.Y.1989); *Baptist Medical Ctr. v. Singh (In re Baptist Medical Ctr.)*, 80 B.R. 637, 645–46 (Bankr.E.D.N.Y. 1987)).

■ The Court will utilize the judicial abstention doctrine as it was set forth in two cases cited by the second circuit in *Coker*. The two cases, *Ionosphere* and *Baptist Medical*, both used a multipart test identified by the United States Supreme Court to determine whether abstention should be invoked. *Ionosphere*, 108 B.R. at 954 (citing *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 814–15, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976); *Baptist Medical*, 80 B.R. at 646 n. 10 (citing *Colorado* )). *Ionosphere* identified the test as incorporating six factors for consideration:

> (1) convenience of the federal forum; (2) avoidance of piecemeal litigation; (3) the order in which the courts obtained jurisdiction; (4) whether either court has assumed jurisdiction over property; (5) the source of law for decision; and (6) whether the state court can adequately protect the rights of the party seeking federal jurisdiction.

*Ionosphere*, 108 B.R. at 954 (citing *Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 602–03 (2d Cir.1988)).

*Ionosphere* went further, though, and listed the factors that a bankruptcy court should consider when deciding whether to abstain pursuant to section 1334(c)(1). *Id.* This same list was also accepted by the district court in *In re Craft Architectural Metals Corp.*, 115 B.R. 423 (E.D.N.Y.1989). *Craft* represents the most recent discussion of section 1334(c)(1) by a district court within the Eastern District of New York. In the *Craft* case, District Judge Wexler adopted the opinion and recommendation of Bankruptcy Judge Goetz in which the bankruptcy court decided to voluntarily abstain from hearing a certain proceeding in which the debtor was involved. The list, which consists of twelve

factors, was included in the bankruptcy court opinion and recommendation and became adopted by the district court; it is as follows:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Id.* at 432 (quoting *Republic Reader's Serv., Inc. v. Magazine Serv. Bur., Inc. (In re Republic Reader's Serv., Inc.),* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987) and citing *In re Shelly's Inc.,* 97 B.R. 370, 372 (Bankr. S.D.Ohio 1989); *United Sec. & Comms., Inc. v. Rite Aid Corp. (In re United Sec. & Comms. Inc.),* 93 B.R. 945, 960 (Bankr. S.D.Ohio 1988)); *see also Ionosphere,* 108 B.R. at 954 (listing identical test) (quoting *Republic* ); *compare Kolinsky,* 100 B.R. at 705 ("The key factors for discretionary abstention under 28 U.S.C. § 1334(c)(1) implicate: (1) the interest of justice; (2) the interest of comity with state courts; or (3) respect for state law.").

The Court will apply both the six-part *Ionosphere* and *Baptist Medical* test as well as the twelve-part *Craft* test to the Trustee's Adversary Proceeding. The six-part test is addressed first.

(1) The convenience of the federal forum. The federal bankruptcy forum will not prove to be a convenient one. As the Court dem-

onstrated above, this is a noncore matter. The Court is limited to submitting proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). We may not enter a final order in this proceeding. *Id.* Only the district court may enter a final order, and then only after a de novo review of any matter(s) to which any party timely and specifically objects. *Id.* Of course, this will not be true in a state court. Moreover, the Defendant has indicated that it will demand a jury trial. Defendant's Memorandum of Law at 11. The Court is very concerned that it would be improper for it to conduct a jury trial in a noncore matter due to the apparent conflict between the seventh amendment of the United States Constitution and section 157(c)(1). The seventh amendment states that "no fact tried by jury[ ] shall be otherwise re-examined in any Court of the United States...." U.S. Const. amend. VII. As noted above, however, section 157(c)(1) provides for a district court's de novo review of any matter to which a party specifically and timely objects. 28 U.S.C. § 157(c)(1). Presumably, the de novo review can be of the factual determination(s) of a jury, to which a party has properly objected. It has been held that a bankruptcy judge may not constitutionally conduct a jury trial in noncore matters due to this conflict. *E.g., Beard v. Braunstein,* 914 F.2d 434 (3d Cir.1990); *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.),* 916 F.2d 1444 (9th Cir.1990). *Cf. Ben Cooper,* 896 F.2d 1394, 1403–04 (2d Cir.1990) (holding, after analysis of certain statutes, that bankruptcy courts may constitutionally conduct jury trials in core proceedings, but possibly intimating that jury trials in noncore proceedings would be impermissible since the same analysis would be inapplicable).

Even if a de novo review of the factual determinations of a jury were permissible constitutionally, the waste of judicial resources would be considerable and senseless. Where a jury trial is available to a party and the demand is made, abstention can be proper to eliminate the possible needless waste of judicial resources. *Shelly's, Inc. v. Food Concepts of Wisc., Inc. (In re Shelly's, Inc.),* 97 B.R. 370, 372–72 (Bankr.S.D.Ohio 1989) (citing *Smith–Douglass, Inc. v. Smith (In re*

*Smith–Douglass, Inc.*), 43 B.R. 616 (Bankr. E.D.N.C.1984); *United Sec. & Comms., Inc. v. Rite Aid Corp. (In re United Sec. & Comms., Inc.*), 93 B.R. 945, 961 n. 8 (Bankr. S.D.Ohio 1988)). Envisioning the problems of de novo review, the satellite litigation that could surround the jury trial issue before the merits of the Adversary Proceeding are ever addressed, as well as the possible waste of resources and time of both the judiciary and the parties, it cannot seriously be said that the federal bankruptcy court is the more convenient forum. (The Court notes that the convenience of the federal bankruptcy forum in terms of its physical location is not a factor which weighs either in favor of or against abstention.)

(2) The avoidance of piecemeal litigation. The Trustee's entire Adversary Proceeding is noncore; therefore, no part of it will remain in this Court. Since the matter can be wholly decided by the appropriate state court, there will be no piecemeal litigation.

(3) The order in which the courts obtained jurisdiction. This factor is not applicable since the matter is not pending before another court. The concern which this factor addresses, however, is that one of two courts has proceeded further in adjudicating one matter that is pending before both courts. In that situation, it would be prudent to allow the matter to remain with the court which had progressed further. Since the matter at bar has not yet progressed before this or any court, this factor neither prompts us to retain the Adversary Proceeding nor abstain from hearing it. (Note that if another matter were pending, mandatory abstention would apply.) If this factor is observed from a different perspective, though, the unripened stage of the Adversary Proceeding, in addition to the satisfaction of other elements of the discretionary abstention tests, indicates that abstention is proper.

(4) Whether the court has assumed jurisdiction over property. The Court has assumed jurisdiction over the property of the Debtor's estate; however, we have not assumed jurisdiction over the property which is the subject of the Adversary Proceeding. Indeed, the Debtor's very right to that property must be litigated.

(5) The source of law for the decision. The exclusive source of law necessary to adjudicate the Adversary Proceeding will be New York state law.

Finally, (6) whether the state court can adequately protect the rights of the party seeking federal jurisdiction. The Debtor is the party seeking federal jurisdiction. The appropriate New York state court will rule upon the causes of action asserted in the Adversary Proceeding. There is no reason to envision that the Debtor's rights will not be adequately protected.

The additional twelve-factor list used by the bankruptcy courts also facilitates the Court's analysis.

(1) The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention. As shown in the first factor of the test above, the probable inability of the Court to conduct a jury trial in a noncore matter, the possible costs of a de novo review and an appeal thereof, and the costs (in time and resources) of the possible satellite litigation of these matters, will all hinder the efficient administration of the Debtor's estate. Abstention, in contrast, will serve to aid the estate's efficient administration.

(2) The extent to which state law issues predominate over bankruptcy issues. The Adversary Proceeding raises only state law issues, such as the law of contracts, restitution, negotiable instruments, and the New York Uniform Commercial Code. Bankruptcy issues are nonexistent.

(3) The difficulty or unsettled nature of the applicable state law. It is not obvious at this point whether any of the applicable areas of state law are unsettled or difficult, although the application of the Uniform Commercial Code may become pervasive. Difficulty is sure to exist, though, due to the Court's inadequate ability to efficiently administer a jury trial. *See Data Compass Corp. v. Datafast (In re Data Compass Corp.*), 92 B.R. 575, 583 (Bankr.E.D.N.Y.1988) (noting the "lack of appropriate accommodations, staffing and procedures to address the requirements of conducting a jury trial" in the bankruptcy court); *Wilkey v. Inter–Trade, Inc.*

(*In re Owensboro Distilling Co.*), 108 B.R. 572, 576–77 (Bankr.W.D.Ky.1989); *Weeks v. Kramer* (*In re G. Weeks Sec., Inc.*), 89 B.R. 697, 710 (Bankr.W.D.Tenn.1988); *Stewart v. Strasburger* (*In re Astrocade, Inc.*), 79 B.R. 983, 991 (Bankr.S.D.Ohio 1987); *Zimmerman v. Cavanagh* (*In re Kenval Mktg. Corp.*), 65 B.R. 548, 555 (E.D.Pa.1986). Thus, the difficulty lies not in the application of state law, but in the Court's inadequate ability conduct a trial by jury, in terms of time, staff, and financial resources. Consequently, this factor induces the belief that abstention is appropriate.

(4) The presence of a related proceeding commenced in state court or other nonbankruptcy court. No related proceeding is pending in state court. If one were, the mandatory abstention statute would apply and the need for the present analysis of the wisdom and applicability of discretionary abstention would be unnecessary.

(5) The jurisdictional basis, if any, other than 28 U.S.C. § 1334. The Adversary Proceeding is noncore, and is related the Debtor's within case under title 11. Section 1334(b) is the only jurisdictional basis. Jurisdiction cannot be premised upon diversity of citizenship or federal question, nor is any other jurisdictional basis present, other than section 1334. Thus, were this Adversary Proceeding commenced in federal court without being related to a bankruptcy case, it would be promptly dismissed upon the "suggestion or otherwise" that the court lacks jurisdiction of the subject matter. Fed.R.Civ.P. 12(h) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case. The Adversary Proceeding is not integral to the main bankruptcy case, is not its sole asset, and is not irretrievably interwoven within it.

(7) The substance rather than form of the asserted "core" proceeding. The substance of the asserted core proceedings is the breach of a contract and nonpayment of promissory notes. The substance of these proceedings is state law, not the federal bankruptcy law.

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. There are no core matters alleged in the Adversary Proceeding from which the state law claims must be severed. It is therefore plainly feasible to allow the Trustee to proceed to judgment in state court. Whether enforcement is better sought in this or another court need not now be addressed.

(9) The burden of the court's docket. The Court's docket would be unwisely burdened by the addition of noncore matters and jury trials. The district court's docket likewise will not benefit from having to conduct a de novo review or entertain possible appeals on the power of the Court to conduct a jury trial in a noncore matter.

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. Forum shopping is always a possibility when a party commences an action in the bankruptcy court, where the federal court's jurisdiction is nonexclusive and concurrent with a state court's jurisdiction. But nothing more about the present matter indicates that the Debtor or Trustee has engaged in forum shopping.

(11) The existence of a right to a jury trial. The right to a jury trial exists at least in that part of the Adversary Proceeding in which the Trustee has asserted the breach of a contract. Congress' grant to the bankruptcy court of the right to submit proposed findings of fact and conclusions of law in this noncore proceeding, 28 U.S.C. § 157(c)(1), cannot eliminate the parties' right to a trial by jury. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 52–57, 109 S.Ct. 2782, 2796–98, 106 L.Ed.2d 26 (1989). The discussion above demonstrates that the parties' right to a jury trial is a persuasive factor in the Court's holding that abstention is proper.

(12) The presence in the proceeding of nondebtor parties. The Court recognizes that this factor is not satisfied.

The Court holds that pursuant to the extensive analysis above, using the tests given by the controlling district and circuit courts and the Supreme Court, it has been overwhelmingly established that the doctrine of permissive abstention should be utilized.

Accordingly, the Defendant's Motion for a declaration that the Adversary Proceeding is a noncore proceeding is GRANTED; the Court, furthermore, hereby ABSTAINS from hearing the three state law causes of action asserted by the Trustee in the Adversary Proceeding. The Trustee is granted leave to pursue the Debtor's claims in the appropriate state court.[2]

SO ORDERED.

---

2. The Defendant has represented that the Debtor's three causes of action asserted in the Adversary Proceeding could timely be commenced by the Trustee in the appropriate New York state court. Defendant's Memorandum of Law at 13. Thus, it is unlikely that the Defendant will viably (or ethically) be permitted to assert the statute of limitations as an affirmative defense. Nonetheless, in the event the Defendant asserts the statute of limitations as an affirmative defense to these causes of action, upon timely motion by the Trustee, the Court's order of abstention shall be severed from the within opinion, and vacated, and the Adversary Proceeding shall be reinstated.