929 F.Supp. 174 (1996)
In re NASDAQ MARKET MAKERS ANTITRUST LITIGATION.
Robert Kevin TISDALE and Lillian A. Tisdale, Plaintiffs,
v.
A.G. EDWARDS & SONS, et al., Defendants.
MDL No. 1023.
No. 96 Civil 2614 (RWS).
United States District Court, S.D. New York.
June 25, 1996.
*175 Bainbridge & Straus, Birmingham, AL, New York City (Michael Straus, of counsel), Lovell & Skirnick, Liaison Counsel, New York City (Christopher Lovell, of counsel), for Plaintiffs.
Shearman & Sterling, Liaison Counsel, New York City (Joseph T. McLaughlin, James T. Halverson, Robert Steinbuch, of counsel), for Defendants and Herzog Hein Geduld, Inc.
Lawrence, Kamin, Saunders & Uhlenhop, Chicago, IL (Lawrence A. Rosen, of counsel), for Nash, Weiss & Co.

*176 OPINION

SWEET, District Judge.
In this antitrust action, transferred to this Court from the United States District Court for the Middle District of Alabama (the "Alabama Federal Court") by order of the Judicial Panel on Multi-District Litigation (the "JPML"), Plaintiffs Robert K. Tisdale and Lillian A. Tisdale ("Plaintiffs" or the "Tisdales") have moved pursuant to 28 U.S.C. § 1447(c) to remand the action to the Circuit Court of Montgomery County, Alabama, where the Complaint was originally filed.
Because federal question jurisdiction exists, and for the reasons set forth below, the motion will be denied.

The Parties
The Tisdales, husband and wife, are residents of Montgomery County, Alabama, who purchased securities traded on the NASDAQ exchange.
Defendants  A.G. Edwards & Sons, Inc.; Alex. Brown & Sons, Incorporated; Cantor Fitzgerald & Co.; Cowen & Co.; CS First Boston Corporation; Donaldson, Lufkin & Jenrette Securities Corporation sued herein as Donaldson, Lufkin & Jenrette, Inc.; Hambrecht & Quist L.L.C.; Herzog, Heine, Geduld, Inc.; J.C. Bradford & Co.; Jeffries & Company, Inc.; EVEREN Securities, Inc. sued herein as Kemper Securities Group, Inc.; Kidder, Peabody & Co. Incorporated; Legg Mason Wood Walker, Incorporated; Lehman Brothers Inc.; Mayer & Schweitzer, Inc.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; Montgomery Securities; Morgan Stanley & Co., Incorporated; Nash, Weiss & Co.; OLDE Discount Corporation; Oppenheimer & Co., Inc.; Paine Webber, Incorporated; Piper Jaffray Inc.; Prudential Securities Incorporated; Robertson, Stephens & Company; The Robinson-Humphrey Company Inc.; Salomon Brothers Inc.; Sherwood Securities Corp.; Smith Barney Inc.; Troster Singer; UBS Securities Inc.; and Weeden & Co. L.P.  are market-makers in securities traded on the NASDAQ exchange.
The parties, facts, and prior proceedings in In re Nasdaq Market-Makers Antitrust Litigation, MDL 1023, are set forth in this Court's previous opinions in this action, In re NASDAQ Market-Makers Antitrust Litig., 929 F.Supp. 723 (S.D.N.Y.1996); In re NASDAQ Market-Makers Antitrust Litig., No. 94 Civ. 3996, 1996 WL 187409 (S.D.N.Y. April 18, 1996); In re NASDAQ Market-Makers Antitrust Litig., 164 F.R.D. 346 (S.D.N.Y.1996); In re NASDAQ Market-Makers Antitrust Litig., 894 F.Supp. 703 (S.D.N.Y.1995), familiarity with which is assumed.

Facts and Prior Proceedings
Plaintiffs filed this action in the Circuit Court of Montgomery County, Alabama (the "Alabama State Court"), on December 15, 1995. On January 12, 1996, all Defendants joined in the removal of the action to the Alabama Federal Court, where the action was assigned to the Honorable Ira DeMent. On January 16, 1996, Plaintiffs applied for an order to show cause why the case should not be remanded (the "Remand Motion"). The motion was fully briefed to Judge DeMent by the parties. On April 4, 1996, prior to Judge DeMent's resolving the Remand Motion, the JPML ordered the case transferred to this Court for coordinated pretrial proceedings with In re NASDAQ.
On April 19, 1996, the Tisdales wrote to this Court, directing its attention to the pendency of the Remand Motion and attaching photocopies of the briefs and related papers submitted to Judge DeMent. The letter was deemed to be a motion before this Court for remand. On May 6, 1996, Defendants submitted a supplemental memorandum of law in opposition. Oral argument was heard and the motion was deemed fully submitted on May 8, 1996.

The Complaint
The Tisdales seek redress for Defendants' alleged conduct in colluding to fix and maintain artificially wide "spreads" in the trading of securities on the NASDAQ. The Tisdales, on behalf of themselves and all others similarly situated, assert two claims. One sets out a cause of action pursuant to a pair of Alabama statutes. The first of these statutes states in pertinent part:
(a) Any person, firm, or corporation injured or damaged by an unlawful trust, *177 combine or monopoly, or its effect, direct or indirect, may, in each instance of such injury or damage, recover the sum of $500 and all actual damages from any person, firm, or corporation creating, operating, aiding, or abetting such trust, combine, or monopoly and may commence the action therefor against any one or more of the parties to the trust, combine, or monopoly, or their attorneys, officer, or agents, who aid or abet such trust, combine, or monopoly.
Ala.Code § 6-5-60 (1975). The other statute upon which the first claim seeks relief reads in pertinent part:
Any person or corporation who engages or agrees with another person or corporation or enters, directly or indirectly, into any combination, pool, trust, or confederation to regulate or fix the price of any article or commodity to be sold or produced within this state or any person or corporation who enters into, becomes a member of or party to any pool agreement, combination, or confederation to fix or limit the quantity of any articles or commodity to be produced, manufactured, mined, or sold in this state must be fined, on conviction, not less than $500 nor more than $2,000.
Ala.Code § 8-10-1 (1975).
The second claim in the Complaint seeks relief under the Alabama common law of agency, based on Defendants' alleged violation of the duty of an agent to its principal.

Discussion

I. Legal Standards

A. Standards Governing Removal and Remand

Motions to remand venue from a federal district court to a state court are governed by Section 1447(c) of Title 28 of the United States Code. The statute provides, inter alia, that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).
Removal is proper only if the court has original jurisdiction of the matter. Glen 6 Assocs. v. Dedaj, 770 F.Supp. 225, 227 (S.D.N.Y.1991); see also Isaacs v. Group Health, Inc., 668 F.Supp. 306, 311 (S.D.N.Y. 1987) (on motion to remand, removing party bears burden of establishing that case is within federal court's removal jurisdiction); Crazy Eddie, Inc. v. Cotter, 666 F.Supp. 503, 508 (S.D.N.Y.1987) (same).

B. Governing Precedent

Where a case is transferred to a district court for consolidation pursuant to 28 U.S.C. § 1407, as here, "a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit." Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir.1993) (citing Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.), 950 F.2d 839, 847 (2d Cir.1991); In re Korean Air Lines Disaster, 829 F.2d 1171, 1175-76 (D.C.Cir.1987) (Ruth Bader Ginsburg, J.), aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989)); see also Coker, 950 F.2d at 847 (where transfer was made pursuant to 28 U.S.C. § 157(b)(5), "`a transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit.'") (quoting Korean Air Lines, 829 F.2d at 1174).
Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), in which the Supreme Court elaborated on Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is not to the contrary. These cases "require a federal court ruling upon questions of state law to apply the same state substantive law, including choice-of-law rules, that would have been applied by a state court in the jurisdiction in which the case was filed." Menowitz, 991 F.2d at 40. Yet in Menowitz, our Court of Appeals held explicitly that "the rule of Van Dusen does not apply by analogy where a case is transferred under § 1407 to a federal court that has a different construction of relevant federal law than the federal court in which the action was filed." Id. at 40; accord Korean Air Lines, 829 F.2d at 1174.
Indeed, in the absence of a single body of law for unified proceedings, "[t]he conduct of *178 multi district litigation, which is invariably time consuming as it is, will grind to a standstill while transferee judges read separate briefs, each based on the case law of a transferor circuit, on a single issue of federal law." In re Integrated Resources Real Estate Ltd. Partnerships Secs. Litig., 815 F.Supp. 620, 635-36 (S.D.N.Y.1993) (quoting Pan Am, 950 F.2d at 847).
Van Dusen is, therefore, inapposite. The law of the Second Circuit will be applied here where the circuits are in conflict, to avoid potential conflicts in interpretation and to uphold the efficiency sought by 28 U.S.C. § 1407.

II. Federal Question Jurisdiction Exists

A federal court has jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420 (1983); see Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir.1986) (citing Franchise Tax Bd., 463 U.S. at 1, 103 S.Ct. at 2842; Gully v. First Nat'l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). Such a cause of action exists here, and, as a result, removal can be based on federal question jurisdiction.
Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."). Thus, the burden lies with Defendants here to establish a valid basis for federal removal jurisdiction. See, e.g., B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir.1981). The Court must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff. Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir.1983); B., Inc. at 545.
Plaintiff is the "master of his complaint," Caterpillar Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); Travelers Indem. Co., 794 F.2d at 758 (citing The Fair, 228 U.S. at 25, 33 S.Ct. at 411), and "`[w]here plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground' to defeat removal." Traveler's Indem., 794 F.2d at 758 (quoting 1A J. Moore & B. Ringle, Moore's Federal Practice ¶ 0.160, at 185 (2d ed. 1979)). Indeed, "he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, 482 U.S. at 392, 107 S.Ct. at 2429.
One exception to this otherwise inviolable rule, the "artful pleading doctrine", provides that courts "will not permit [a] plaintiff to use artful pleading to close off [a] defendant's right to a federal forum ... [and] the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiffs' characterization." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); see also Travelers Indem. Co., 794 F.2d at 758 ("a plaintiff may not defeat removal by clothing a federal claim in state garb").
State claims have been deemed to be well-disguised federal claims, and the artful pleading doctrine invoked, where "the elements of the claim [a]re virtually identical to those of a claim expressly grounded on federal law," Id. at 760; see also Ultramar Amer. Ltd. v. Dwelle, 900 F.2d 1412, 1414 (9th Cir.1990); Four Way Plant Farm v. NCCI, 894 F.Supp. 1538 (M.D.Ala.1995). Here, the Tisdale Complaint substantially mimics the language of the In re NASDAQ Refiled Consolidated Complaint. The facts on which the two complaints rest are nearly entirely the same, and the Alabama state statute makes illegal essentially the same acts prohibited by the federal antitrust laws.
*179 Precisely this situation was confronted in In re Wiring Device Antitrust Litig., 498 F.Supp. 79 (E.D.N.Y.1980). There, a government indictment and more than thirty private cases alleging the same price-fixing scheme were brought in the federal courts and consolidated. The subsequent filing of a state court action based on the same alleged facts resulted in removal to federal court by the JPML. Defendants had no special relationship to South Carolina, none of the defendants was incorporated in South Carolina, and none of the defendants had headquarters in South Carolina. Wiring Device, 498 F.Supp. at 82, 85. The sole connection between the defendants and South Carolina was that small amounts of the defendants' products were imported into the state. The Honorable Jack Weinstein held that these facts implicated interstate commerce and that the complaint was, therefore, federal in nature. Id. Judge Weinstein noted that the complaint was "identical in all particulars to those which have previously been asserted against these same defendants in a federal indictment and in more than thirty civil class action suits brought by direct purchasers." Id. at 82. The Wiring Device court denied the plaintiffs' motion to remand, holding that:
[s]ince it is unquestioned that defendant here is engaged in interstate commerce and that the products whose prices are the subject of this action were manufactured outside South Carolina and shipped there for sale, and since South Carolina has itself limited the application of its state antitrust statutes to intrastate commerce, the true nature of plaintiffs' complaint is federal.
Id. at 83.
Wiring Device is exceedingly similar to the case at bar. In both cases, the plaintiffs had filed numerous class actions in federal district courts throughout the country referred to the JPML for consolidation. After consolidation, a class action complaint was filed in a state court alleging a national conspiracy identical to that alleged in the existing federal action, but alleging only state law violations. Similarly, as in that case, here the Alabama state courts have deemed the Alabama antitrust statutes upon which the Complaint is based to regulate only intrastate commerce. In Georgia Fruit Exch. v. Turnipseed, 9 Ala.App. 123, 62 So. 542 (1913), the Alabama Court of Appeals held that "[t]here being thus both a state and national law prohibiting unlawful combinations in restraint of trade  the one law relat[es] to intrastate, the other to interstate, commerce...." Id. 62 So. at 546. In Ex parte Rice, 259 Ala. 570, 67 So.2d 825 (Ala.1953), the Supreme Court of Alabama held that:
The federal statutes, Sherman and Clayton Acts, prescribe the terms of unlawful monopolies and restraints of trade as they should also be administered in Alabama. The question, therefore, is properly affected by those acts, and its must be controlled by them when the business involved in the suit affects interstate commerce.
Id. 67 So.2d at 829; see also San Ann Tobacco Co. v. Hamm, 283 Ala. 397, 217 So.2d 803, 805 (1968) (citing Simonetti, Inc. v. State ex rel. Gallion, 272 Ala. 398, 132 So.2d 252, 255 (1961)) (determining that an Alabama statute regulating unfair competition in tobacco industry "if valid at all, can only be held so as an exercise of the police power of the state over intrastate commerce").
In another similar case, Three J Farms, Inc. v. Alton Box Bd. Co., Civ. No. 78-1257, 1978 WL 1459 (D.S.C. Nov. 29, 1978), rev'd on other grounds, 609 F.2d 112 (4th Cir. 1979), cert. denied, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980), the Court encountered an action transferred for the purpose of coordinated pretrial proceedings in a multi-district litigation, also focussed on the virtual identity of facts alleged in the complaint filed in the existing multi-district action and those in later-filed state complaint. The court stated that an examination of the "true nature of plaintiffs' claim ... leads this Court to the inescapable conclusion that plaintiffs have set forth a cause of action under the Sherman Act and have used large portions of the allegations in the unified complaint to do so." Three J Farms, 1978 WL 1459, at *5. It reasoned further:
It is obvious that the present plaintiffs are making a determined effort to prevent their action from being consolidated for pretrial proceedings with the other cases *180 arising out of the same facts and allegations. The plaintiffs contend that they prefer to litigate under South Carolina antitrust law ... If the present plaintiffs wish to pursue their rights under the South Carolina antitrust law ... this could be included as a pendent claim in their federal proceedings, and this would not require a duplication of efforts in pretrial discovery proceedings nor would it justify the cost, waste of judicial time and other complications attendant to discovery proceedings in South Carolina separate from those being conducted in M.D.L. No. 310.
Id. at *2. Three J Farms demonstrates that even if plaintiffs bring a state cause of action, removal would still be proper, because of the federal nature of the claims and the pendency of the MDL action.
The Tisdales note that in Travelers Indemnity, our Court of Appeals held that "substantial identity between the elements of a state and a federal claim" alone is insufficient to invoke the artful pleading doctrine, since the application of that element alone would vitiate the "master of the complaint" rule, Travelers Indem., 794 F.2d at 760 (citing The Fair, 228 U.S. at 25, 33 S.Ct. at 411). Travelers Indemnity acknowledged, however, that although Federated Department Stores had not abolished the master-of-the-complaint rule, it had limited it. Travelers Indem. Co., 794 F.2d at 760-61. Indeed, neither Federated Department Stores nor Travelers Indemnity involved situations like that at bar and in Wiring Device and Three J Farms, where the court to which the case had been removed was overseeing a multi-district litigation involving very nearly the same set of facts, the same allegedly illegal actions, nearly identical federal and state law claims, and a proposed federal class that included the plaintiffs in the state law action. As Judge Weinstein noted in Wiring Device,
A federal court need not blind itself to the real gravamen of a claim because plaintiff tenders a blindfold in the form of artificial characterizations in its complaint. Peeking to determine reality is particularly appropriate where it is apparent that the central federal claim is inseparable from the state law theory, and where the question of federal jurisdiction turns on the out-of-state status of the parties and the interstate nature of transactions complained of. Where, as here, all defendants are unquestionably engaged in interstate commerce, those who are damaged from an alleged restraint of trade find a remedy in the federal, not the state, antitrust laws.
Wiring Device, 498 F.Supp. at 82 (citations omitted). Federated Stores, as interpreted by Travelers Indemnity, permits a departure from the master-of-the-complaint rule in such an instance.

Conclusion
All arguments not explicitly addressed have been considered and rejected as irrelevant or meritless. In the light of federal question jurisdiction, and for the reasons set forth above, the motion to remand is denied.
It is so ordered.