**Michael D. RAND, Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.**

**No. 98 CV 7129(ADS).**

United States District Court, E.D. New York.

May 7, 1999.

Schiavetti, Geisler, Corgan, Soscia, De-Vito, Gabriele, and Nicholson, Garden City, New York, by Stephen D. Haber, of counsel, for plaintiff.

Wright, Pindulic & Hamelsky, LLP, Paramus, New Jersey, by Andrew I. Hamelsky, of counsel, for defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On October 13, 1998 Michael D. Rand (the "plaintiff" or "Rand") commenced this action in the Supreme Court of the State of New York, County of Nassau. On November 13, 1998 The Equitable Life Assurance Society of the United States (the "defendant" or the "Equitable") removed the action from the State Supreme Court to the United States District Court for the Eastern District of New York. Presently before the Court are two motions. The plaintiff moves to remand the case to the New York State Supreme Court, Nassau County or in the alternative, for leave to file an amended complaint. As part of his motion to remand, the plaintiff also seeks the award of costs and attorneys fees pursuant to 28 U.S.C. § 1447(c). On the other hand, the defendant moves to dismiss the plaintiff's complaint for failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P.").

### I. BACKGROUND

The dispute between the parties centers on several insurance policies issued by the defendant. While the plaintiff's six page complaint contains relatively few specific facts regarding the nature of the respective policies and the background of the parties involved, the motions submitted by both parties contain various affidavits and

exhibits. As both the plaintiff and the defendant have had the opportunity to respond to the extraneous materials submitted in conjunction with their respective motions, the Court has reviewed these various exhibits in conjunction with the plaintiff's complaint. *See G.&A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985).

The plaintiff is a chiropractor who operated, as a sole proprietorship, Woodhaven Chiropractic Center (the "Center"), from its inception in October, 1981 to 1984. In 1984, the plaintiff entered into a partnership with Joseph Composto ("Composto") and together, as partners, they operated the Center until the plaintiff alleges he became disabled in February 1997.

On October 26, 1981, the defendant issued and delivered to the plaintiff its disability income policy and its overhead expense disability policy, both effective October 9, 1981. ("the 1981 policies"). At the time the plaintiff purchased the 1981 policies, he had no employees. The premiums for the disability income policy were paid by the plaintiff personally, while the premiums for the overhead expense disability policy, which covered the expenses of the Center in the event of his disability, were paid by checks drawn on the account of the Center.

On November 15, 1989, the defendant issued and delivered to the plaintiff a supplemental disability income policy, effective September 15, 1989. ("the 1989 policy"). The plaintiff's partner, Composto, also obtained a disability income policy that became effective on September 15, 1989. Although the Center had approximately seven employees at that time, only the plaintiff and his partner purchased disability income policies. As the plaintiff and his partner both purchased disability policies, they were eligible and received a discounted group policy rate from the insurance company. Despite the fact that all premium notices were sent to the Center, except for the initial binder check, which was taken by the insurance broker at the time of the application, and which the plaintiff alleges was subsequently reimbursed to the Center by the plaintiff Composto, the premiums for the 1989 policy were paid by the plaintiff and his partner from their personal accounts.

It should be noted that while no other employee received disability insurance benefits, it appears that from May 1997 through February 1998, the Center maintained a group health insurance policy with Oxford Health Plans for all of its employees.

On February 21, 1997, the plaintiff claims to have become totally disabled due to psoriatic arthritis and, secondarily, hepatitis related to the methotrexate prescribed to treat the arthritis. As a result of his disability, the plaintiff filed a notice of claim with the defendant on March 26, 1997. On March 23, 1998, the defendants, in writing, refused to make any payments under either the 1981 or 1989 policies.

On October 13, 1998, the plaintiff filed a complaint in the Supreme Court of the State of New York, County of Nassau. The plaintiff's complaint seeks: (1) a declaratory judgment that the plaintiff is entitled to disability benefits under the three disability policies issued by the defendant; (2) $3,000,000 in punitive damages due to the defendant's alleged breach of its fiduciary duty; and (3) $3,000,000 in actual damages due to the defendant's violation of New York General Business Law § 349.

On November 13, 1998 the plaintiff's complaint was removed to this Court by the defendant. The Notice of Removal asserts that the plaintiff's claim for relief raises a federal question under the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1001 *et seq.* Specifically, the defendant's Notice of Removal states the following:

> Plaintiff's claim for relief raises a federal question under ERISA for the following reasons. Plaintiff's complaint alleges entitlement to monthly disability benefits under disability income insurance policies issued by · Defendant. In the

issuance of said policies, Plaintiff secured a reduced group rate to the fact that simultaneous policies were purchased by other chiropractors in the Plaintiff's office. At the request of Plaintiff, Defendant sent premium notices for the disability income policies directly to Plaintiff's business address. The premiums for Plaintiff's policies were paid by Plaintiff's employer, Woodhaven Chiropractic Center, and Plaintiff's employer took a proactive approach in the administration of said policies by facilitating the procurement of and premium payments for the subject policies. The disability income policies under which Plaintiff has filed suit were paid for and administered by his employer, and, as such, are a benefit flowing from his employment. Accordingly, Plaintiff's disability insurance contract was part of a "plan, fund or program ... established or maintained by [his] employer ... [and] such plan, fund or program was established or maintained for the purpose of providing [plaintiff and other employees], through the purchase of insurance or otherwise, ... benefits in the event of sickness, accident [and] disability". Because Plaintiff's claim for benefits under disability policies nos. N81 714 532, N81 714 531, and N89 716 149 falls under the provisions of ERISA, the Court has subject matter jurisdiction over this case.

The defendant now asserts, pursuant to Rule 12(b)(6) of the Fed.R.Civ.P., that because the three insurance policies are governed by ERISA, the plaintiff's state law claims and additional contractual damages are pre-empted and must be dismissed. Conversely, the plaintiff contends that this case should be remanded to the Nassau County Supreme Court as ERISA does not apply to the insurance policies at issue.

## II. DISCUSSION

### A. *Motion To Remand*

A cause of action that was originally filed in the state court may be removed by the defendant where "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In order to remove a case from state to federal court, the notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). There is no contention that the defendants failed to properly comply with Section 1446.

While Sections 1441 and 1446 permit removal to the federal courts in certain circumstances, 28 U.S.C. § 1447(c) "authorizes a remand on the basis of any defect in removal procedure or because the district court lacks subject matter jurisdiction." *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*, 31 F.3d 70, 72 (2d Cir.1994) (internal quotations and citations omitted).

■ "There are several well-established principles governing the propriety of removal petitions under Section 1446, which the court must keep in mind ...." *Town of Moreau, et al. v. New York State Dept. of Environmental Conservation, et al.*, 96 Civ. 983, 1997 WL 243258, at *1 (N.D.N.Y. 1997) (internal quotations and citation omitted). First, "[r]emoval jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *In re NASDAQ Market Makers Antitrust Litigation*, 929 F.Supp. 174, 178 (S.D.N.Y. 1996) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 [1941] ) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *State of New York v. Lutheran Center for the Aging, Inc.*, 957 F.Supp. 393, 397 (E.D.N.Y. 1997) ("Removal statutes are to be strictly

construed[.]"). Thus, "all doubts should be resolved in favor of remand." *Leslie v. BancTec Service Corp.*, 928 F.Supp. 341, 347 (S.D.N.Y.1996) (internal quotations and citations omitted); *see also Boyer v. Snap–On Tools Corp.*, 913 F.2d 108 (3d Cir.1990) *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Town of Moreau*, 1997 WL 243258, at *1 (citing *Leslie v. BancTec Service Corp.*, 928 F.Supp. 341).

■ "[T]he burden is on the removing party to prove that it has met the requirements for removal." *Avon Products, Inc. v. A/J Partnership*, 89 Civ. 3743/8032, 1990 WL 422416, at *1 (S.D.N.Y. March 1, 1990); *Lutheran Center for the Aging*, 957 F.Supp. at 397; *NASDAQ Market Makers*, 929 F.Supp. at 178; *Fisher v. Building Services*, 96 Civ. 4317, 1997 WL 590843, *2 (S.D.N.Y. Sept.22, 1997).

■ Pursuant to 28 U.S.C. § 1331, the district courts have original jurisdiction over all civil actions arising under the Constitution and laws or treaties of the United States. However, where removal is predicated upon federal question jurisdiction, the "well-pleaded complaint rule" governs. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 [1936] ). In .other words, "a case may be filed in federal court only if a federal question appears on the face of the plaintiff's 'well-pleaded-complaint.' " *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir.1997). The Supreme Court has held that this rule "severely limits the number of cases in which state law creates the cause of action that may be initiated in or remanded to federal district court, thereby avoiding more-or-less automatically a number of potentially serious federal-state conflicts." *Franchise Tax Bd. v. Const. Laborers Vac. Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The Supreme Court has added that:

> Whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). Even if a valid federal defense exists, the Second Circuit has held that the case cannot be removed unless there exists either a federal question or diversity jurisdiction on the face of the original complaint. *Hernandez*, 116 F.3d at 38. It is within this framework that the Court addresses the plaintiff's motion to remand.

**B.** *The Removal Standard Applied*

After the filing by the parties of the complete set of motion papers in this case, the United States Court of Appeals for the Eleventh Circuit, in *Slamen v. Paul Revere Life Insurance Company*, 166 F.3d 1102 (11th Cir.1999), confronted a fact pattern directly analogous to the facts presently before this Court: As such, the Court will conduct an exhaustive analysis of the Eleventh Circuit's decision in *Slamen*.

In 1981, Slamen's solely-owned dental practice purchased a health and life insurance plan from the Centennial Life Insurance Company for Slamen and his employees. The plan, however, did not provide disability insurance. In 1985, Slamen purchased from Paul Revere Life Insurance Company ("Paul Revere"), a disability insurance policy that covered only himself. Similar to the health and life insurance policies, the disability insurance premiums were paid by Slamen's professional corporation.

Due to Paul Revere's refusal to pay benefits under Slamen's disability insurance policy, in December, 1996, Slamen filed a complaint in State court alleging that Paul Revere's refusal to pay was in

breach of the insurance contract and was tortious. Paul Revere removed the case to the United States District Court for the Northern District of Alabama. Thereafter, the District Court dismissed Slamen's state law claims as preempted by ERISA, but permitted Slamen leave to amend for the purpose of stating an ERISA cause of action. After a bench trial, the district court entered judgment in favor of Paul Revere. Slamen appealed to the Eleventh Circuit.

Similar to the issue before this Court, the sole issue on appeal was "whether Slamen's disability insurance policy [was] an ERISA employee welfare benefit plan." *Id.* at 1104. The Eleventh Circuit began its analysis by examining ERISA's definition of an employee welfare benefit plan, which states that:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, [or] disability....

*Paul Revere,* 166 F.3d at 1104 (quoting 29 U.S.C. § 1002[1] ).

Next, the Eleventh Circuit discussed the decision in *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982) (en banc), which set forth five requirements that must be established for an employee welfare benefit plan to fall within ERISA's scope. "[A] welfare plan requires (1) a 'plan, fund, or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability ... benefits ... (5) to participants or their beneficiaries." *Paul Revere,* 166 F.3d at 1104 (quoting *Donovan,* 688 F.2d at 1371). "[A] 'plan, fund, or program' under

ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Paul Revere,* 166 F.3d at 1104 (quoting *Donovan,* 688 F.2d at 1373). The Eleventh Circuit pointed out, however, that "not all welfare benefit plans that meet these five criteria are governed by ERISA." *Paul Revere,* 166 F.3d at 1104. As the court in *Donovan* explained:

> [t]he gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program. **Thus, plans, funds, or programs under which no ... employees or former employees participate are not employee welfare benefit plans under Title I of ERISA.**

*Paul Revere,* 166 F.3d at 1104 (quoting *Donovan,* 688 F.2d at 1371) (emphasis added); 29 C.F.R. § 2510.3–3(b) (1998) ("[T]he term 'employee benefit plan' shall not include any plan, fund, or program ... under which no employees are participants covered under the plan.").

The Eleventh Circuit added that "in order to establish an ERISA employee welfare benefit plan, the plan must provide benefits to at least one employee, not including an employee who is also the owner of the business in question." *Paul Revere,* 166 F.3d at 1104 (quoting *Williams v. Wright,* 927 F.2d 1540, 1545 [11th Cir. 1991]; 29 C.F.R. § 2510.3–3[c][1] [1998] ["An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse."]; *Peterson v. American Life & Health Ins. Co.,* 48

F.3d 404, 407 [9th Cir.1995] ["Neither an owner of a business nor a partner in a partnership can constitute an 'employee' for purposes of determining the existence of an ERISA plan."]; *Meredith v. Time Ins. Co.*, 980 F.2d 352, 357 [5th Cir.1993] ["These regulations prevent Meredith from being simultaneously an employer and an employee."] ).

Then, the Eleventh Circuit summarized the arguments made by Slamen and agreed with his position that ERISA was inapplicable to his disability insurance policy:

> Slamen argues that the disability insurance policy he purchased from Paul Revere in 1985 was not an ERISA plan because he wholly owned the dental practice and was the only person covered under the disability insurance policy. Thus, by virtue of section 2510.3–3(c)(1), he argues that he could not be considered an employee for purposes of determining whether the disability insurance policy was an ERISA plan. We agree. **Slamen's disability insurance policy covered only himself. No employees received any benefits under the plan** and there is nothing in the record showing that the disability insurance policy bears any relationship to the health and life insurance benefits that Slamen provides to his employees. On the contrary, the two policies were purchased at different times, from different insurers, and for different purposes. The first policy covers Slamen's employees as well as himself, while the second policy only covers Slamen and was not designed to benefit Slamen's employees. In light of these facts, we are not persuaded by Paul Revere's argument that ERISA nonetheless applies here because Slamen had in place other insurance for his employees.

*Paul Revere*, 166 F.3d at 1105 (emphasis added).

Relying on *Kemp v. IBM Corp.*, 109 F.3d 708, 713 (11th Cir.1997) (holding that "non-ERISA benefits do not fall within

ERISA's reach merely because they are included in a multibenefit plan along with ERISA benefits."), *Zeiger v. Zeiger*, 131 F.3d 150, (9th Cir.1997) (holding that "A non-ERISA plan is not converted into an ERISA plan merely because an employer also sponsors a separate benefits plan subject to ERISA."), and *Robertson v. Alexander Grant & Co.*, 798 F.2d 868 (5th Cir.1986), (holding that ERISA did not apply to a plan covering only partners, and rejecting the argument that ERISA applied because a separate plan also covered a class of employees) the Court concluded that "Slamen's disability insurance policy is not an ERISA plan because all the benefits flow to the owner, Dr. Herbert Slamen. Because the plan is not governed by ERISA, Slamen's action for the recovery of benefits did not arise under ERISA and the district court was without federal jurisdiction over Slamen's claim." *Paul Revere*, 166 F.3d at 1106. As a result, the Eleventh Circuit reversed the judgment of the district court and remanded the case to the Alabama State Court.

It should also be noted, that the Court in *Paul Revere* rejected the argument that because Slamen's professional corporation, rather than Slamen himself, paid the premiums on the disability insurance plan, his plan was governed by ERISA. The Court stated that "as we have said, to establish that the plan in this case is governed by ERISA, Paul Revere would have to show that an employee other than Dr. Slamen received benefits under the disability insurance policy. Paul Revere has failed to make this showing and the clear import of the ERISA regulations is that Dr. Slamen cannot be considered an employee of the professional corporation which he owns." *Id.* at 1106, n. 4.

This Court agrees with the Eleventh Circuit's decision in Paul Revere. In addition, the Court also notes that three Second Circuit decisions support this Court's adoption of the Eleventh Circuit's opinion in *Paul Revere*. In *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 565 (2d

Cir.1998), it was held that "both the Supreme Court and this Court have emphasized that ERISA applies only where such an undertaking or obligation requires the creation of an ongoing administrative program." *Id.* (citation omitted). Similarly, in *Fugarino v. Hartford Life and Accident Insurance Co.,* 969 F.2d 178, 186 (6th Cir. 1992), it was held that "[a]s a result of these regulations, a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA." *Id.* (citation omitted).

Finally, in *Schwartz v. Gordon,* 761 F.2d 864, 867–869 (2d Cir.1985), the Court stressed that:

> [a] self employed individual who voluntarily decides to set aside a portion of his income for his own retirement, unlike a worker employed by another, has complete control over the amount, investment and form of the fund created by him for his retirement.... [W]hen the assets of employees and a self-employed employee are commingled, for example, the only way to assure the needed protection for the former is to protect the latter as well. Under other circumstances, however, protection for the self-employed employer may seem unnecessary to guard the interests of employees, as when the assets of each are kept in wholly segregated accounts within a plan.

*Id.*

■ Based on the Eleventh Circuit's decision in *Paul Revere* as well as the Second Circuit's decisions in *Tischmann, Fugarino,* and *Schwartz,* the Court finds that the defendant has failed to meet its burden of demonstrating that removal from the New York State Supreme Court to the United States District Court was warranted. Casting all evidentiary doubts in favor of remand, it appears that the disability insurance policies at issue were for the sole interest and benefit of the plaintiff, and not his employees. While the plaintiff's partner, Composto, purchased a disability income policy in 1989, he cannot be considered an employee for purposes of determining whether ERISA is applicable.

In addition, none of the seven employees who were working as of 1989 at the Woodhaven Chiropractic Center were entitled to disability insurance benefits. In fact, when the plaintiff purchased the 1981 policies, he had no employees. The only beneficiaries of the disability insurance policies at issue were the plaintiff and his partner. Furthermore, the 1981 policies were paid directly by the plaintiff; and with the exception of the initial binder check, all of the premiums for the 1989 supplemental disability income policy were also paid directly by the plaintiff.

■ The defendant's argument that the employees group health insurance plan in effect from May 1997 through February 1998 mandates a finding that the disability insurance policies are covered by ERISA is unpersuasive. The Court agrees with the Eleventh Circuit's rationale in *Paul Revere,* which confronted a similar situation, and stated that "we are not persuaded by Paul Revere's argument that ERISA nonetheless applies here because Slamen had in place other insurance for his employees.... Non–ERISA benefits do not fall within ERISA's reach merely because they are included in a multibenefit plan along with ERISA benefits." *Paul Revere,* 166 F.3d at 1105 (quotation omitted). The defendant has not provided any evidence that the health insurance plan and the disability insurance policies were commingled so as to warrant compliance with the regulations contained in ERISA. Thus, the Court concludes that the plaintiff's disability insurance policies, which are not covered by ERISA, are not converted into an ERISA plan merely because the plaintiff's employees received unrelated health insurance.

Accordingly, the Court holds that the disability insurance policies at issue are not part of an employee welfare benefit plan pursuant to ERISA. Therefore, the case must be remanded to the Supreme

Court of the State of New York, Nassau County and the defendant's motion to dismiss the plaintiff's complaint as preempted by ERISA is denied.

### C. *Plaintiff's Request For Costs And Disbursements*

Under 28 U.S.C. § 1447(c), in connection with the remand of a case, a federal court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Cohen v. Reed,* 868 F.Supp. 489, 497 (E.D.N.Y.1994) (citing *Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, 923–24 [2nd Cir.1992] [noting discretionary nature of award] ). *See also Worthy v. Schering Corporation,* 607 F.Supp. 653, 657 (E.D.N.Y.1985) (holding that where a remand is, in effect, "a sua sponte order for lack of subject matter jurisdiction" an award of costs to plaintiff would be inappropriate); *Eastern States Health & Welfare Fund v. Philip Morris, Inc.,* 11 F.Supp.2d 384, 407 (S.D.N.Y.1998) (holding that "costs should not be awarded automatically upon a remand, but rather should be based on a consideration of whether the grounds for removal were substantial or presented a close question.") The Court is of the view that while it lacks subject matter jurisdiction, the facts and law underlining the removal of this case from the Nassau Supreme Court by the defendant does not warrant the assessment of costs and disbursements.

### III. CONCLUSION

Having reviewed the parties' submissions and for the reasons set forth above; it is hereby

**ORDERED,** that the plaintiff Michael D. Rand's motion to remand this case to the Supreme Court of the State of New York, County of Nassau is **GRANTED;** and it is further

**ORDERED,** that the defendant The Equitable Life Assurance Society of the United States motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED;** and it is further

**ORDERED,** that the plaintiff's request for costs, disbursements and attorneys fees is **DENIED;** and it is further

**ORDERED,** that the Clerk of the Court shall close this case.

**SO ORDERED.**